714 So.2d 715 (1998)
George UNDERWOOD, Jr., et al.,
v.
LANE MEMORIAL HOSPITAL, et al.
No. 97-CC-1997.
Supreme Court of Louisiana.
July 8, 1998.
*716 Rick A. Caballero, Baton Rouge, Randolph Alexander Piedrahita, Shreveport, Due, Caballero, Perry, Price & Guidry, Baton Rouge, for Applicant.
William Eugene Scott, III, Robert Warren Robinson, Herbert J. Mang, Jr., Watson, Blanche, Wilson & Posner, Baton Rouge, Richard Lyons Weil, Guste, Barnett & Shushan, New Orleans, Vincent Paul Fornias, Johnny Edward Wellons, Knatrow, Spaht, Weaver & Blitzer, Baton Rouge, for Respondent.
LEMMON, Justice.[*]
This is a survival and wrongful death action arising out of two successive injuries allegedly caused by separate acts or omissions of different tortfeasors. Both the initial tortfeasor and the health care provider who treated the tort victim for the initial injury are political subdivisions of the state, and each is located in a different parish.
The question presently before the court is whether both tortfeasors can be sued in the same venue or whether the actions cumulated in this suit must be tried separately because there is no parish of proper venue for both under a literal reading of the venue provision for political subdivisions.

Facts
In April 1993, plaintiff's son, Frederick Underwood, broke his leg when he was tackled by another student while playing tag football in a physical education class at a public high school in East Feliciana Parish. He was taken to Lane Memorial Hospital in East Baton Rouge Parish, where he was admitted for treatment. Early the next day, he experienced respiratory problems which worsened and culminated in his death that afternoon.
In March 1994, plaintiffs filed a petition for damages against Lane Memorial under La. Rev.Stat. 40:1299.39.1. After the medical review panel rendered a decision, Underwood's parents filed this suit in East Feliciana Parish in September 1996.[1] Named as defendants, among others, were the East Feliciana Parish School Board and Lane Memorial Hospital,[2] both political subdivisions of the state.
Lane Memorial excepted to the suit on the grounds of improper venue. Relying on La. Rev.Stat. 13:5104 B, which provides that suits against a political subdivision must be filed in the parish in which the political subdivision is located or the parish in which the cause of action arises, Lane Memorial contended that venue was proper as to the medical malpractice action only in East Baton Rouge Parish, since it was located there and since all of the negligent acts or omissions alleged in the pleadings occurred there.
The trial court sustained the exception of improper venue and dismissed plaintiffs' actions against Lane Memorial without prejudice. After the court of appeal denied plaintiffs' application for supervisory writs, this court granted certiorari to address the correctness of the trial court's interlocutory venue ruling. 97-1997 (La.11/14/97); 703 So.2d 1279.

Venue Generally
Venue means the parish where an action may properly be brought and tried under the rules regulating the subject. La.Code Civ. Proc. art. 41. Venue provisions are significantly different from jurisdictional provisions. Code articles governing jurisdiction over the person, for instance, are based largely on constitutional requirements of due process and of full faith and credit. On the other hand, Code articles governing venue are based on legislative considerations for allocating cases, according to the particular action and the particular parties, among the various parishes which have an interest in the action (over which some Louisiana court has the constitutional power to exercise jurisdiction).
The original concept of venue was that "one must be sued before his own judge." Former La.Code Practice art. 162. This concept, however, has become anachronistic with *717 the ever-increasing number of legislative exceptions to venue at the party's domicile. Kellis v. Farber, 523 So.2d 843, 847 (La. 1988).
The 1960 Code of Civil Procedure divided the rules of venue into three categories: (1) Article 44 provides a non-waivable mandatory venue for actions such as nullity of judgment; (2) Articles 78 through 83 provide a preferred but waivable venue which governs exclusively when the rule conflicts with any article except Article 44; and (3) Article 42 provides a general venue in which the defendant must be sued at his "home base," but is subject to numerous exceptions in Articles 71 through 77, which provide specific optional venues that the plaintiff may choose as an alternative to the venue in Article 42. Thus the rules of venue today are less designed to provide protection for the defendant, who has no constitutional right to be tried in a particular forum, and more designed to allocate cases among parishes with an interest in the proceeding so as to provide for efficient disposition of caseloads.

Venue in Actions against Public Bodies
Article 42, which essentially provides for venue at the "home base" of the entity sued, has no provision for venue in actions against the state or political subdivisions of the state. Rather, the provisions for these entities are set forth in La.Rev.Stat. 13:5104, which provides:
A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.
B. All suits filed against a political subdivision of the state or against an officer or employee of a political subdivision for conduct arising out of the discharge of his official duties or within the course and scope of his employment shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises. (emphasis added).
Section 5104 does not fit neatly into any of the three categories of venue established by the Code. At least prior to the 1985 amendment changing the word "may" in Subsection B to "shall," Section 5104 appeared to provide a general rule of venue similar to Article 42's provision for venue at the defendant's "home base," with a specific exception similar to Article 74. When the word "may" was used in both subsections, Section 5104 arguably could have been construed either as providing for preferred venue in one of two parishes or as providing for general venue subject to all of the exceptions. The legislative change in the wording of Subsection B to "shall" has been construed by several intermediate courts to mean that the venue for actions against a political subdivision is in one of the two specified parishes and no other, given the rule of construction that "shall" is mandatory. See Texaco, Inc. v. Plaquemines Parish Government, 529 So.2d 1128 (La.App. 1st Cir.), cert. denied, 533 So.2d 359 (La.1988); Revolta v. Regional Transit Auth., 607 So.2d 963 (La.App.4th Cir.1992); Commercial National Bank in Shreveport v. First National Bank of Fairfield, Texas, 603 So.2d 270, cert. denied, 605 So.2d 1151 (La.1992). This court has not addressed this issue directly.[3]
In the context of venue, the permissive "may" and the mandatory "shall" have often been interchanged. Indeed, Article 42, the general venue statute, employs the word "shall" to define the general venue for different types of defendants, yet is subject to the numerous statutory exceptions. See Gurtler, Hebert & Co. v. Marquette Casualty. Co., 145 So.2d 145 (La.App. 4th Cir.1962)(holding that "may" in venue provision involving enforcing private works is mandatory); see also 3 A Norman J. Singer, Sutherland Statutory Construction § 67.04 (5th ed.1992)(noting that venue provisions should be liberally construed). Nevertheless, the fact that the Legislature *718 in 1985 expressly deleted the word "may" and substituted the word "shall" in Section 5104 B indicates a legislative intent that a single political subdivision can be sued only in one of the two specified parishes and that no other exceptions are applicable.
When a single political subdivision is the only defendant, the choice of venues provided by Section 5104 B is logical and consistent with the legislative intent that a political subdivision generally must be sued at its "home base" or in the parish which gave rise to the cause of action. And even when a political subdivision is one of several defendants, that legislative intent arguably is still applicable, especially when a parish of proper venue under Section 5104 B is also proper venue for the other defendants. However, when two political subdivisions located in different parishes are joined as defendants and alleged to be joint or solidary obligors as to the same transaction or occurrence, additional policy considerations enter into the determination of legislative intent.
The policy considerations permeating the entire Code of Civil Procedure (expounded in Article 5051's mandate that the articles of the Code "are to be construed liberally and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves"), as well as the Code's judicially efficient objective of promoting joinder of actions and parties, dictate that courts should avoid the judicial inefficiency and the probability of inconsistent results when several trials are required for the same operative facts in intertwined actions. The entire theme of the Code is to avoid multiple trials of the same operative facts whenever possible.
Against this background, one can easily conclude that the Legislature, in amending Section 5104 B, did not envision the situation of two political subdivisions sued as solidary obligors in one action arising out of the same transaction or occurrence, with each asserting its "right" to be sued in the parish where it is located. If this logical conclusion is correct, the situation in which each of two political subdivisions is demanding its "right" to preferred venue, thereby requiring the judicial inefficiency of two separate trials with the probability of inconsistent results as to liability or damages or both, is an "unprovided for" situation not contemplated by the Legislature to be covered by Section 5104 B.
There are other considerations supporting this decision. Under the rationale of Weber v. Charity Hosp. of La. at New Orleans, 475 So.2d 1047(La.1985), if the negligence of both defendants is proved, the School Board will be solidarily liable for the medical malpractice damages (although the damages attributable exclusively to the original tort will be owed exclusively by the initial tortfeasor). A common venue for the cumulated actions is indispensable for the just and proper adjudication of the claims for the solidarily owed damages and for indemnification of the initial tortfeasor against the second.
Moreover, La.Code Civ. Proc. art. 1111 allows a defendant to "bring in by third party petition any person who is or may be liable for all or part of the principal demand." Venue need not be proper for the incidental demand as long as venue is proper for the principal demand.[4] La.Code Civ. Proc. art. 1034. Thus in the present case, even if plaintiffs had not joined Lane Memorial in the principal action, the East Feliciana Parish School Board could bring Lane Memorial into this action by third party demand for indemnification for the medical malpractice damages (for which they allegedly are solidarily liable, although Lane Memorial is not liable for the initial damages). Lane Memorial, once brought into the present action properly by the Board, would be required to try the medical malpractice claim on the incidental demand, and it is highly unlikely that the Legislature intended to prohibit plaintiff from trying their medical malpractice claim against Lane Memorial in the same action.
Accordingly, in this type of multiple political subdivision setting, we decline to construe the legislative intent of Section 5104 B as giving each political subdivision the right to demand being tried in its choice of venue, *719 without regard to the inefficiency and inconsistency that the Code's theme is designed to prevent. Viewing this as an "unprovided for" situation not envisioned by the Legislature in adopting Section 5104 B, we resolve the problem by applying the doctrine of ancillary venue.

Ancillary Venue
Ancillary venue applies when separate claims involving common or identical questions of fact share no common venue. The concept of ancillary venue allows such claims to be tried together for reasons of judicial economy and efficiency, even though venue is not proper technically for one claim or one party.
While this court has not previously applied the concept of ancillary venue, the lower appellate courts have done so in several cases over the past twenty-five years. One of the first cases to invoke this concept was Smith v. Baton Rouge Bank & Trust Co., 286 So.2d 394, 397 (La.App. 4th Cir.1973). In that case, a Baton Rouge bank obtained a deficiency judgment in Orleans Parish against Smith, a resident of Orleans. Smith filed an action in Orleans Parish to enjoin execution of the default deficiency judgment on the basis that the judgment was obtained by fraud and ill practices, and further sought damages for the Bank's unjust enrichment on the basis that Smith furnished additional security for the existing loan with the understanding that no deficiency judgment would be taken. The court ruled that Smith's injunction claim essentially asserted an action for nullity, for which venue under Article 44 was exclusively in Orleans where the judgment was rendered, and that the related claim for damages based on the same factual allegations should be tried in the same proceeding. The court reasoned:
[W]here venue is proper as to one claim, the disposition of which will necessarily affect a related second claim as to which venue might otherwise be improper, the court has the authority to decide both claims in the interest of efficient judicial administration....
If the court in Smith had not invoked the doctrine of ancillary venue, the two claims, based on virtually identical evidence, would have required two separate trials in different parishes, with the attendant waste of judicial time and litigants' resources, and the probability of inconsistent results. See also Kellis v. Farber, 523 So.2d 843, 850 n. 2 (La.1988)(Lemmon, J., concurring)(collecting cases in which other appellate courts have invoked this concept primarily in cases involving cumulated claims against a single defendant).
The appellate courts have extended this concept to the multiparty context when venue is proper as to only one defendant. See International Stevedores, Inc. v. Hanlon, 499 So.2d 1183 (La.App. 5th Cir.), cert. denied, 501 So.2d 230 (La.1987); Prokop v. Mack Trucks, Inc., 694 So.2d 387 (La.App. 5th Cir.1996). See also Katherine Shaw Spaht, Persons, 46 La. L.Rev. 613, 618 (1986) ("[Ancillary venue] involves one claim against two parties arising out of one factual circumstance. The Code of Civil Procedure adopts this concept in article 73 by permitting solidary obligors to be sued in any parish where venue is proper as to one of them.") (emphasis in original).[5]
The scenario presented in this case cries out for application of the concept of ancillary venue in cumulated actions, involving two defendant political subdivisions, which arise out of the same transaction or occurrence. We do not necessarily embrace the doctrine of ancillary venue as a solution to all venue problems in multiparty litigation. In the present case, however, while recognizing the general legislative intent for political subdivisions to enjoy preferred venue, we apply the doctrine of ancillary venue to resolve this "unprovided for" situation, and we hold that otherwise properly cumulated actions[6] against two political subdivisions arising *720 out of the same transaction or occurrence may be brought in one of the two specified parishes of proper venue for either of the political subdivisions, but in no other parish.

Decree
The judgment of the district court sustaining the exception of improper venue and dismissing Lane Memorial from the action is reversed, the exception is overruled, and the case is remanded for further proceedings.
KIMBALL and TRAYLOR, JJ., concur, agreeing with the result.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part II, § 3.
[1] According to the briefs, an identical action was filed in East Baton Rouge Parish.
[2] The proper name was Hospital Service District No. 1 of East Baton Rouge d/b/a Lane Memorial Hospital.
[3] This court's statement in Akins v. Parish of Jefferson, 539 So.2d 44 (La.1989) (per curiam), that La.Rev.Stat. 13:5104 B is mandatory was not necessary to the holding and constituted dicta.
[4] La.Code Civ. Proc art. 1061 B also provides for a compulsory reconventional demand, regardless of the venue governing the defendant-in-reconvention.
[5] Professor Spaht advocates this concept as a solution for a problem of inadequate procedural rules for multiparty litigation involving termination of community property regimes where each spouse may have a separate domicile and owe a common debt to a creditor creating a potential for having to commence two separate actions on the same community debt.
[6] La.Code Civ. Proc. art. 464 provides the requirements for cumulation of two actions involving multiple defendants, and one requirement is that the venue is proper for each action.