| iMURRAY, Judge.
Defendants, Entergy Corporation and Gulf States Utilities Company,[1] seek reversal of a *128 judgment overruling their declinatory exception of improper venue. We affirm.
FACTS AND PROCEEDINGS BELOW
Clarence Washington, a resident of East Baton Rouge Parish, filed this employment discrimination suit in Orleans Parish Civil District Court on November 17, 1997. His petition asserts that he was employed in the defendant’s Baton Rouge offices since 1968, but he had been forced to file for early retirement benefits in December 1996 due to a pattern of discriminatory conduct that began in January 1995. Mr. Washington claims he is entitled to damages, attorney fees and court costs under Louisiana’s statutes prohibiting discrimination based upon race and age.
Entergy responded with this exception, asserting that venue is improper in ^Orleans Parish because all of the allegedly wrongful conduct, including the decision that led to termination of Mr. Washington’s employment,[2] occurred in East Baton Rouge Parish. It contended that because the new Louisiana Employment Discrimination Law[3] became effective before Mr. Washington filed this suit, venue is proper only in East Baton Rouge Parish under R.S. §23:313 (governing the age discrimination claim) and §23:333 A (discrimination based upon race or color).
Both of these statutes state, in pertinent part:
A plaintiff who has a cause of action against an employer ... for a violation of this Part may file a suit in the district court for the parish in which the alleged violation occurred ....[4]
Entergy argued that under this wording, a plaintiff may or may not file a suit for damages, but if a claim is asserted, it can only be filed where the alleged violation occurred.
In opposition to Entergy’s exception, Mr. Washington established that each of the named defendants is a licensed foreign corporation that designated a New Orleans address as its principal business establishment in the state, so that venue is proper under Article 42(4) of the Code of Civil Procedure. He argued that the newly enacted statutes cited by Entergy, which use the permissive “may” rather than the mandatory “shall,” merely permit an additional venue to that provided for in Article 42(4). In addition, Mr. Washington maintained that he was wrongfully discharged in New Orleans,' where the decision to terminate him was made, because New Orleans was given as the employer’s location on his “pink slip” at | .^termination, and his notice concerning retirement eligibility came from the same address. He also emphasized the allegations in his petition specifying that Entergy’s company-wide discriminatory policies and practices were initiated and effectuated by those in the New Orleans “Corporate Executive Office.” He argued, therefore, that, even were the statutes interpreted as Entergy suggested, his suit was properly filed in Orleans Parish where “the alleged violation occurred,” at least in part.
The trial court overruled Entergy’s exception, after considering the evidence and arguments, holding that §§23:313 and 333 A are not exclusive mandatory venue provisions, but instead supplement the general rules in Article 42 of the Code of Civil Procedure. Consequently, the court found that Orleans Parish, the location of defendant’s principal place of business, was a proper venue. The court did not reach the question of where “the alleged violation occurred.”
ARGUMENTS AND DISCUSSION
“The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government.” Theriot v. Midland *129 Risk Ins. Co., 95-2895, p. 4 (La.5/20/97), 694 So.2d 184, 187, citing Touchard v. Williams, 617 So.2d 885 (La.1993). Chapter 2 of the Louisiana Civil Code sets forth the rules that guide a court in interpreting legislative acts. When a law is clear and unambiguous and its application does not lead to absurd consequences it shall be applied as written. La. Civ.Code art. 9. However, if the language of a statute is susceptible of two reasonable interpretations, the legislative intent must be determined by reference to the common meanings of the words as well as the context in which they occur. La. Civ.Code arts. 11, 12; Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc., 96-1716, p. 9 (La.7/1/97), 696 So.2d 1373, 1378. Civil Code article 13 requires that laws on the 14same subject matter must be considered when interpreting a new provision. It is presumed that the Legislature acts with knowledge of existing provisions on the same subject. Theriot v. Midland Risk Ins. Co., 95-2895, p. 4 (La.5/20/97), 694 So.2d 184, 187. In addition, Article 10 of the Civil Code requires that a statute be given “the meaning that best conforms to the purpose of the law” as well as that “which best comports with the principles of reason, justice and convenience.” Louisiana Smoked Products at 9, 696 So.2d at 1378. A court must further assume that the Legislature is aware of these well-established principles of statutory construction. Theriot at 4, 694 So.2d at 187.
 As Mr. Washington notes, both La. R.S. §1:3 and Code of Civil Procedure article 5053 expressly provide that “[t]he word ‘shall’ is mandatory, and the word ‘may1 is permissive.” Thus, the common meaning of the language in §§23:313 and 333 A is to permit, rather than to require, the filing of a discrimination suit where the alleged violation occurred. Entergy counters that this reading renders the phrase “the parish in which the alleged violation occurred” superfluous because Article 74 of the Code of Civil Procedure already permits filing of a tort suit where the wrongful conduct allegedly occurred.
Primary to our consideration of the statutory language at issue herein is the fact that the Legislature has demonstrated its ability to clearly and unambiguously restrict venue. For example, both R.S. §18:1404 (suits challenging election results) and §13:5104 B (suits against political subdivisions) are not only captioned as venue statutes, but also are worded unambiguously to specify that such actions “shall” be filed only in certain parishes. By comparison, R.S. §13:5104 A, which has been held to be permissive, provides that a suit against the state “may be instituted” in the state capital or where the cause of action arose. James v. State Farm Mut. Auto. Ins. Co., 597 So.2d 555 (La.App. 2d Cir.1992).
IsSections 23:313 and 333 A, the provisions at issue herein, are captioned as “Civil suit authorized.” These statutes specify different classes of defendants who can be sued as well as the different types of damages and relief available, depending upon the basis for the alleged discrimination. Had the Legislature intended to establish mandatory venue for such suits it easily could have demonstrated that intent merely by adding the word “only” to these statutes: “A plaintiff ... may file a suit only in the district court for the parish in which the alleged violation occurred....”
It is equally important to note that the Legislature enacted the statutes at issue with a demonstrated awareness of the distinction between “may” and “shall.” Although numerous examples might be found, the most apparent evidence of this awareness is seen in R.S. §13:5104. Both subsections A and B of this statute were enacted to provide that suits against the state and political subdivisions “may be instituted” in particular districts. However, §5104 B specifically was amended in 1985 to substitute “shall” for “may.” By this amendment the Legislature demonstrated its understanding of the difference between “shall” and “may” and its ability to expressly restrict venue when that is its intent. See Underwood v. Lane Memorial Hospital, 97-1997, p. 5 (La.7/8/98), 714 So.2d 715, 717-18 (Legislature’s express substitution of the word “shall” for “may” in §5104 B indicates its intent that political subdivision can be sued only in one of. two specified parishes without exception). Thus, not only is the Legislature presumed to be aware of the difference in meaning between “may” and “shall,” well before the 1997 enactment *130 of §§23:313 and 333 A, it demonstrated its ability to utilize that difference to achieve different ends.
Entergy acknowledges that use of the word “may” generally indicates a permissive statute. However, it argues that this principle does not apply to venue |6provisions. It bases this argument upon the following statement by the Supreme Court:
In the context of venue, the permissive “may” and the mandatory “shall” have often been interchanged. Indeed, Article 42, the general venue statute, employs the word “shall” to define the general venue for different types of defendants, yet is subject to the numerous statutory exceptions. See Gurtler, Hebert & Co. v. Marquette Casualty Co., 145 So.2d 145 (La.App. 4th Cir.1962) (holding that “may” in venue provision involving enforcing private works [act] is mandatory).
Underwood at 5, 714 So.2d at 717 (additional citation omitted). Entergy asserts that “may” was used instead of “shall” in the statutes at issue here in order to avoid the absurd result of a law requiring a person to file a suit rather than merely permitting a suit to be filed. It argues also that we are bound by our decision in Gurtler, cited above in Underwood, to interpret §§23:313 and 333 A as establishing an exclusive, mandatory venue.
Entergy’s argument that the Legislature used the permissive “may,” even though it intended to establish an exclusive, mandatory venue, in order to avoid an absurd result is disingenuous. As noted above, the Legislature could have avoided that result, and still have evidenced its intent to make the venue provision mandatory and exclusive, by the mere addition of the word “only” to these statutes.
In addition, Entergy’s reliance on Underwood is misplaced. The question in that ease was whether R.S. §13:5104 B, providing that a suit against a political subdivision “shall” be filed in one of two venues, would be interpreted so as to require two separate suits and trials when two political subdivisions in different parishes were named defendants. The court noted that the situation presented in Underwood had not been contemplated by the Legislature, when it provided that suits against political subdivisions “shall” be filed only in one of two specified parishes. The Court, therefore, applied the doctrine of “ancillary venue” in order Rto accommodate the legislative preference accorded to political subdivisions as well as judicial efficiency. By balancing practical considerations against the express wording of §5104 B, the Underwood court decided that one suit against two political subdivisions would be permitted if filed in a parish of proper venue as to either. This decision, holding that, under these special circumstances not contemplated by the Legislature, “shall” will not be interpreted as absolutely mandatory, does not require that the “may” in §§23:313 and 333 A be interpreted as mandatory.
Nor do we find this court’s 1962 decision in Gurtler applicable to the issue presented herein. The statute at issue in Gurtler governed the enforcement of a privilege against immovable property, which traditionally has implicated special jurisdictional and venue considerations because of the Public Records Doctrine. As in Underwood, an express, long-established policy had to be balanced against the general interpretive rules regarding the use of the words “may” and “shall.” Entergy next contends that, because the former age discrimination statute, R.S. §23:973, permitted suit “in any court of competent jurisdiction,” the new language of §§23:313 and 333 A demonstrates the Legislature’s intent to restrict venue for discrimination suits.
Mr. Washington counters that the provisions at issue were enacted in connection with “a wholesale revamping and consolidation” of the laws regarding employment discrimination rather than as a specific amendment of a venue statute. He argues that, under these circumstances, the mere change in wording cannot be seen as evidence that the Legislature intended to enact a severe restriction on venue for such suits.
The newly enacted discrimination statutes use virtually the same language as in former R.S. §23:1006, the state’s original 1983 prohibition of discrimination | gbased on race, color, *131 religion, sex or national origin, which provided in pertinent part:
A plaintiff who has a cause of action against an employer for discrimination in employment may file a suit in the district court for the parish in which the alleged discrimination occurred....
Because the 1997 Legislature did not adopt new language in its consolidation of these laws, but merely obtained consistency by selecting the wording of one pre-existing provision, there is no evidence that a new restriction on venue was intended.[5]
Entergy next argues that our interpretation of this statutory language should be controlled by the holding that 42 U.S.C. §2000e — 5(f)(3), an analogous federal discrimination statute, provides for mandatory venue despite its use of the word “may.”
We disagree. Initially, we note that the federal statute cited by Entergy specifies four possible venues for a discrimination suit, whereas §§ 23:313 and 333 A specify only one. Consequently, the two provisions are not sufficiently similar for the federal statute to assist in our interpretation of the Louisiana statute. Even were the provisions identical, we do not find that the rationale that justifies a state court looking to federal law for guidance in interpreting the state’s substantive law enacted to redress employment discrimination[6] applies to the consideration of procedural issues such as venue.
Finally, citing the Supreme Court’s decision in Underwood, Entergy argues that public policy favors a determination that discrimination suits must be filed |9where the wrongful conduct occurred because modern venue rules are less concerned with protecting the defendant and are designed to “allocate cases among allocate cases among parishes with an interest in the proceeding,” 97-1997 at p. 3, 714 So.2d at 717. Entergy contends that the parish where the wrongful conduct occurred would have the greatest interest in regulating the conduct and the relationships of those involved. It also argues that, because witnesses, documents and other proof most likely would be at the location where the alleged wrongful conduct occurred, judicial efficiency weighs in favor of a mandatory and restrictive interpretation of §§23:313 and 333 A.
We do not agree that Underwood supports a restrictive interpretation of §§23:313 and 333 A. We find the opposite to be true. As the Supreme Court noted in Underwood, permissible venue options have been broadened since the adoption of the Code of Civil Procedure in 1960, and the Legislature no longer requires that a suit be filed only in a defendant’s parish of domicile. Because the modern trend is to provide an increasing range of alternative venues, a mandatory limitation should be found only where such a restriction has been clearly expressed. “Where there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the effect that makes the least rather than the most change in the existing body of the law.” Theriot v. Midland Risk Ins. Co., 95-2895 at 4, 694 So.2d at 186-87 [citing Touchard v. Williams, 617 So.2d 885, 892 (La.1993)]. Legislative policy, therefore, favors an interpretation that these statutes provide an additional venue option as an alternative to, rather than as a substitute for, exclusive venue at the defendant’s domicile.
We also must reject Entergy’s contention that judicial efficiency supports a determination that discrimination suits should be filed only where “the alleged violation occurred.” As demonstrated in this case, there can be considerable | ipdispute concerning the location at which discriminatory conduct occurred, especially when it is asserted that the alleged violation resulted from an employer’s policy or company-wide procedures. Thus, *132 in a great number of cases, the determination of the collateral issue of the location at which discrimination occurred would increase litigation. This would undermine rather than foster judicial efficiency. In addition, there may be suits that involve conduct occurring at a job site distant from the domicile of both the employer and employee, such as those arising in the construction trade. In such cases, all parties would be inconvenienced by a prohibition on suits in the parish where the defendant’s principal place of business is located.
Finally, because the laws at issue are applicable statewide, we find no merit to Enter-gy’s contention that one parish would have a greater interest in enforcing those laws.
CONCLUSION
For the reasons given, we find that the language in R.S. §§23:313 and 333 A must be interpreted to permit the filing of a discrimination suit where the wrongful conduct occurred, in addition to a venue that is proper under Article 42 of the Code of Civil Procedure. In this case, Orleans Parish, the location of the Entergy’s principal business establishment, is a proper venue. The trial court’s overruling of the exception of improper venue was correct. The court below did not determine where “the alleged violation occurred” in this case. Because this determination it is not necessary to our decision, we pretermit discussion of this issue.
AFFIRMED.

. Although the relationship between the defendants is not made clear in the record, it appears that a merger and restructuring in the early 1990s resulted in Gulf States Utilities Company becoming Entergy Gulf States, Inc., a subsidiary *128 of Entergy Corporation. Both defendants are hereinafter collectively referred to as "Entergy.”

. An affidavit from plaintiff's former supervisor was offered to support Baton Rouge as the situs of the personnel action.

. Louisiana’s employment discrimination statutes were consolidated into Chapter 3-A of Title 23 of the Revised Statutes, §§301-354, by 1997 La. Acts No. 1409, effective August 1, 1997.

.This same language appears in the parallel provisions regarding discrimination based on disability, R.S. §23:325, and on sickle cell trait, R.S. §23:353.

. Entergy does not argue that discrimination suits brought under former §23:1006 could only be filed where the wrongful conduct occurred, and not in the parish where the defendant's principal place of business was located.

. The similarity of purpose behind federal and state statutes enacted to redress employment discrimination has been cited as justifying a state court's looking to the federal statute for guidance in interpreting the state's substantive law. Bennett v. Corroon and Black Corp., 517 So.2d 1245 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La.1988).