809 So.2d 1275 (2002)
Teresa Lewis WHITE
v.
BEAUREGARD MEMORIAL HOSPITAL, et al.
No. 01-1418.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
*1276 René Joseph Pfefferle, Watson, Blanche, Wilson & Posner, Baton Rouge, LA, Counsel for Defendant/Appellant Beauregard Memorial Hospital.
John E. Morton, Heidel A. Schneider, Hunter & Morton, Alexandria, LA, Counsel for Plaintiff/Appellee Teresa Lewis White.
Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.
PETERS, J.
Teresa Lewis White filed this wrongful death medical malpractice suit, naming as defendants Hospital Service District No. 2 of Beauregard Parish, d/b/a Beauregard Memorial Hospital (Beauregard Memorial), domiciled in Beauregard Parish; Dr. Etienne R. Brown and Dr. Warren W. Gremmel, Jr., two physicians domiciled in Beauregard Parish; Dr. Gremmel's medical malpractice insurer, St. Paul Fire and Marine Insurance Company; and Dr. Frederic B. Wilson, Jr., a physician domiciled in Calcasieu Parish, and his medical malpractice insurer, Preferred Professional Insurance Company. The matter is now before us because Beauregard Memorial appeals the trial court's rejection of its declinatory exception of improper venue.
The litigation arises from medical treatment received by William Lewis beginning at Beauregard Memorial on December 23, 1997. All three defendant physicians treated Mr. Lewis at Beauregard Memorial after his admittance. On December 27, 1997, Mr. Lewis was transferred to St. Patrick's Hospital in Lake Charles, Calcasieu Parish, Louisiana, under the continued care of Dr. Wilson. On January 18, 1998, while still in St. Patrick's Hospital, Mr. Lewis died. The sole issue in this appeal is whether the trial court erred in rejecting Beauregard Memorial's exception of improper venue.

OPINION
The Beauregard Parish Police Jury created Beauregard Memorial as a hospital service district pursuant to the provisions of La.R.S. 46:1051 et seq. It functions under a corporate structure, but with the additional power of expropriation. La.R.S. 46:1060. Additionally, Beauregard Memorial enjoys the status of a political subdivision of the state. La.R.S. 46:1064(A).
Beauregard Memorial first argues that a hospital service district can only be sued at its domicile. It bases this argument on La.R.S. 46:1063 which provides, in pertinent part, that "[t]he police jury creating a hospital service district, with corporate powers, shall designate the domicile of such corporation, at which domicile it shall be sued." (Emphasis added.) Alternatively, Beauregard Memorial argues that La.R.S. 13:5104(B) establishes an exclusive venue in Beauregard Parish as it provides that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." (Emphasis added.) Beauregard Memorial argues that a clear reading of either of these statutes requires that, in any suit filed *1277 against it, Beauregard Parish is the only parish of proper venue.
Consideration of these statutes without regard to the other general and special venue statutes would suggest that Beauregard Memorial's argument has merit. However, La.Code Civ.P. art. 42 also uses the mandatory "shall" in setting forth the seven basic general rules of venue. In fact, La.Code Civ.P. art. 42(1) provides that a suit against an "individual domiciled in the state shall be brought in the parish of his domicile." (Emphasis added.) Reading this provision without regard to other venue provisions would require that Dr. Brown and Dr. Gremmel be sued in Beauregard Parish and that Dr. Wilson be sued in Calcasieu Parish. Additionally, because La.Code Civ.P. art. 42(7) provides that a suit against either of the two medical malpractice insurers "shall be brought in the parish of East Baton Rouge," it follows that a third suit in that parish would be required to litigate the matter against the two medical malpractice insurers.[1] (Emphasis added.) Thus, a literal reading of these provisions would require that three separate suits be filed to pursue the claim against all the defendants.
However, despite the use of "shall" in La.Code Civ.P. art. 42, it is clear that there are other parishes of proper venue for a defendant listed in that Article, depending on the circumstances of the litigation. In fact, because this is an action against joint tortfeasors, La.Code Civ.P. art. 73(A) provides a venue different from the mandatory language of La.Code Civ.P. art. 42. Concerning suits against joint tortfeasors or joint obligors, La.Code Civ.P. art. 73(A) provides:
An action against joint or solidary obligors may be brought in a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant provided that an action for the recovery of damages for an offense or quasi-offense against joint or solidary obligors may be brought in the parish where the plaintiff is domiciled if the parish of plaintiff's domicile would be a parish of proper venue against any defendant under either Article 76 or R.S. 13:3203.[2]
(Emphasis added.)
Thus, a literal reading of this Article would exclude consideration of the special venue provisions of La.R.S. 46:1063 and La.R.S. 13:5104(B) because at least one of the joint or solidary obligors is covered by the venue provisions of La.Code Civ.P. art. 42.
In Underwood v. Lane Memorial Hospital, 97-1997 (La.7/8/98), 714 So.2d 715, the supreme court resolved a venue dispute involving the application of La.R.S. 13:5104(B). While the fact situation in that matter can be distinguished from the matter currently before us, the analysis used in reaching its decision is helpful in resolving this matter.
In Underwood, the plaintiffs filed a survival and wrongful death action against the East Feliciana Parish School Board (School Board) and Hospital Service District No. 1 of East Baton Rouge Parish, d/b/a Lane Memorial Hospital (Lane Memorial). Their son had sustained a broken leg in a physical education class at school *1278 in East Feliciana Parish and was taken to Lane Memorial in East Baton Rouge Parish for treatment. On the day after being admitted to the hospital, the child began to experience respiratory problems and died later in the day. Thus, the claims against the School Board and Lane Memorial arose from separate acts or omissions.
Lane Memorial responded to the suit, which the plaintiffs filed in East Feliciana Parish, with an exception of improper venue based on La.R.S. 13:5104(B). The trial court sustained the exception, and the court of appeal denied the plaintiffs' application for supervisory writs. However, the supreme court reversed the trial court judgment, overruled the exception, and remanded the matter to East Feliciana Parish for further proceedings, using the doctrine of ancillary venue and describing it as follows:
Ancillary venue applies when separate claims involving common or identical questions of fact share no common venue. The concept of ancillary venue allows such claims to be tried together for reasons of judicial economy and efficiency, even though venue is not proper technically for one claim or one party.
Underwood, 714 So.2d at 719.
In reaching its decision, the supreme court summarized the general venue rules as follows:
Venue means the parish where an action may properly be brought and tried under the rules regulating the subject. La.Code Civ.Proc. art. 41. Venue provisions are significantly different from jurisdictional provisions. Code articles governing jurisdiction over the person, for instance, are based largely on constitutional requirements of due process and of full faith and credit. On the other hand, Code articles governing venue are based on legislative considerations for allocating cases, according to the particular action and the particular parties, among the various parishes which have an interest in the action (over which some Louisiana court has the constitutional power to exercise jurisdiction).
The original concept of venue was that "one must be sued before his own judge." Former La.Code Practice art. 162. This concept, however, has become anachronistic with the ever-increasing number of legislative exceptions to venue at the party's domicile. Kellis v. Farber, 523 So.2d 843, 847 (La.1988).
The 1960 Code of Civil Procedure divided the rules of venue into three categories: (1) Article 44 provides a nonwaivable mandatory venue for actions such as nullity of judgment; (2) Articles 78 through 83 provide a preferred but waivable venue which governs exclusively when the rule conflicts with any article except Article 44; and (3) Article 42 provides a general venue in which the defendant must be sued at his "home base," but is subject to numerous exceptions in Articles 71 through 77, which provide specific optional venues that the plaintiff may choose as an alternative to the venue in Article 42. Thus the rules of venue today are less designed to provide protection for the defendant, who has no constitutional right to be tried in a particular forum, and more designed to allocate cases among parishes with an interest in the proceeding so as to provide for efficient disposition of case-loads.

Id. at 716-17. (Emphasis added.)
The supreme court further noted that, "[i]n the context of venue, the permissive *1279 `may' and the mandatory `shall' have often been interchanged" and that even the basic venue provisions of La.Code Civ.P. art. 42 employ "shall" instead of "may" despite the many exceptions to its exclusivity. Id. at 717.
In analyzing how La.R.S. 13:5104(B) fit within the overall venue picture, the supreme court noted that, although it provided the basic venue rule for most individual defendants, La.Code Civ.P. art. 42 contains no "home base" for political subdivisions. Thus, it concluded that La.R.S. 13:5104(B) simply established the "home base" not provided for in the general venue Article. The supreme court noted that:
When a single political subdivision is the only defendant, the choice of venues provided by Section 5104 B is logical and consistent with the legislative intent that a political subdivision generally must be sued at its "home base" or in the parish which gave rise to the cause of action. And even when a political subdivision is one of several defendants, that legislative intent arguably is still applicable, especially when a parish of proper venue under Section 5104 B is also proper venue for the other defendants. However, when two political subdivisions located in different parishes are joined as defendants and alleged to be joint or solidary obligors as to the same transaction or occurrence, additional policy considerations enter into the determination of legislative intent.
The policy considerations permeating the entire Code of Civil Procedure (expounded in Article 5051's mandate that the articles of the Code "are to be construed liberally and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves"), as well as the Code's judicially efficient objective of promoting joinder of actions and parties, dictate that courts should avoid the judicial inefficiency and the probability of inconsistent results when several trials are required for the same operative facts in intertwined actions. The entire theme of the Code is to avoid multiple trials of the same operative facts whenever possible.
Against this background, one can easily conclude that the Legislature, in amending Section 5104 B, did not envision the situation of two political subdivisions sued as solidary obligors in one action arising out of the same transaction or occurrence, with each asserting its "right" to be sued in the parish where it is located. If this logical conclusion is correct, the situation in which each of two political subdivisions is demanding its "right" to preferred venue, thereby requiring the judicial inefficiency of two separate trials with the probability of inconsistent results as to liability or damages or both, is an "unprovided for" situation not contemplated by the Legislature to be covered by Section 5104 B.[3]
Underwood, 714 So.2d at 718.
While the court in Underwood resolved a venue conflict between two political subdivisions, it recognized that the concept of venue no longer provides a special right to a defendant to be sued within his home jurisdiction and that the special venue statutes simply create a "home base" not provided in La.Code Civ.P. art. 42.
Although not faced with a conflict between political subdivisions, we are faced *1280 with a conflict between a number of defendants, each having a "home base" venue provision. Certainly, if the legislature did not envision suits against two political subdivisions from different parishes as occurred in Underwood, it follows that the legislature did not intend that the venue provisions of La.R.S. 13:5104(B) and La. R.S. 46:1063 would preclude the application of La.Code Civ.P. art. 73(A) when a political subdivision is joined as a joint or solidary obligor.
We also note that there are other venue provisions that work against application of an exclusivity rule urged by Beauregard Memorial. For example, if the plaintiffs in this matter had sued only the doctors and their insurers, there would be no venue argument because La.Code Civ.P. art. 73(A) clearly would be applicable. However, if one of the doctors or his insurer were to third party Beauregard Memorial, the objection of improper venue could not be urged. See La.Code Civ.P. art. 1034. Thus, we find no merit in Beauregard Memorial's assignments of error.

DISPOSITION
For the foregoing reasons, we affirm the trial court's rejection of the exception of improper venue. We tax all costs of this appeal to Hospital Service District No. 2 of Beauregard Parish, d/b/a Beauregard Memorial Hospital.
AFFIRMED.
NOTES
[1] We assume for the purpose of this opinion that the two medical malpractice insurers are foreign insurers.
[2] The exceptions provided in La.Code Civ. P. art. 76 and La.R.S. 13:3203 are not applicable in this litigation because Mr. Lewis was not domiciled in Louisiana at the time of his death.
[3] The supreme court's reference to the Legislature's intent relates to the enactment of Acts 1985, No. 306, § 1, which changed the word "may" in La.R.S. 13:5104(B) to "shall."