962 So.2d 1094 (2007)
Jerry L. HUBBARD d/b/a JLH Logging, Plaintiff-Applicant
v.
Robert A. PIKE, ELR, L.L.C., and Eskridge, Lueck, Reed, Inc., Defendants-Respondents.
No. 42,233-CW.
Court of Appeal of Louisiana, Second Circuit.
July 11, 2007.
Opinion Modified on Rehearing August 15, 2007.
*1095 Kelly & Townsend by Thomas Taylor Townsend, Natchitoches, for Applicants Jerry L. Hubbard and JLH Logging.
Adams & Reese by Phillip A. Franco, Jeffery E. Richardson, Andrew C. Kolb, Jason P. Franco, New Orleans, Cary A. Desroches, for Respondent Robert A. Pike.
Corkern & Crews by Ronald E. Corkern, Jr., Chaffe McCall by Corinne A. Morrison, James C. Young, Charles P. Blanchard, New Orleans, for Respondents, ELR, L.L.C. & Eskridge, Lueck, Reed, Inc.
Before CARAWAY, DREW and LOLLEY, JJ.
LOLLEY, J.
This court granted a writ and docketed this matter for consideration after reviewing the application for supervisory writ of the plaintiff, Jerry L. Hubbard d/b/a JLH Logging ("Hubbard"). Hubbard maintains that the 8th Judicial District Court, Parish of Winn, Louisiana, erred in granting the declinatory exceptions of improper venue filed separately by the defendants, Robert A. Pike, ELR, L.L.C., and Eskridge, Lueck, Reed, Inc. For the following reasons, we conclude that the judgment of the trial court was ultimately correct, and we affirm.

FACTS
Hubbard, a resident of Winn Parish, entered into a verbal agreement in 2006 with Robert Pike ("Pike"), a resident of St. Tammany Parish. The men were to supply mud to a contractor working with the Army Corps of Engineers for the levee *1096 rebuilding project in Plaquemines Parish following Hurricane Katrina. Hubbard prepared a Partnering Agreement reflecting the verbal agreement. Said agreement reiterated the verbal agreement and indicated that Pike and Hubbard would be equal partners; however, the written agreement was never executed by either of them.
Hubbard and Pike also apparently agreed that two Alabama companies, ELR, L.L.C. ("ELR, LLC") and Eskridge, Lueck & Reed, Inc. ("ELR, Inc."), would be involved in the operation, but those entities' participation in the venture is not at all clear from this application. According to the application, ELR, Inc. is licensed to do business in Louisiana and its principal place of business is in Jefferson Parish, while ELR, LLC is not licensed to do business in Louisiana, but is in fact doing business in this state. Notably, neither entity was mentioned in the Partnering Agreement.
Pike allegedly told Hubbard that a man named Billy Nunguesser, Pike's supposed uncle, could supply mud from his property in Plaquemines Parish. In May 2006, Diamond K Corporation ("Diamond K") entered into a written agreement, which lists Hubbard and ELR, LLCthere is no mention of Pike. According to Hubbard, Pike then schemed to cut Hubbard out of this lucrative contract. Pike allegedly arranged for himself and the business entity defendants to get mud from Nunguesser and resell it to the contractor without involving (or paying) Hubbard.
In June 2006, Hubbard sued the defendants in the 8th Judicial District Court, Winn Parish, Louisiana, alleging, among other claims, that all three defendants acted "in concert and conspiracy" to misrepresent the facts of the arrangement to Hubbard. His petition urged that venue was proper in Winn Parish as to all defendants under La. C.C.P. art. 42 and the long-arm statute, La. R.S. 13:3201, et seq.
In response, all three defendants filed separate declinatory exceptions of improper venue, as well as other exceptions not relevant to Hubbard's writ application. Each defendant argued that La. C.C.P. art. 80 applied to the case, requiring it be heard in the venue of Plaquemines Parish. The trial court conducted a hearing on the exceptions, at which the trial court heard testimony from Hubbard as well as argument from the parties' attorneys. In part, Hubbard testified that he would have been looking to obtain mud from one or more sources in Plaquemines Parish, not only from Nunguesser, and that some of this mud may already have been taken from the point of origin when the partners bought it. Hubbard also said that the partnership had been offered $45 million for the entire deal by a Texas company, apparently before Hubbard had been cut out.
Following the hearing, the trial court issued its ruling with written reasons. The trial court relied on Hubbard's testimony that the mud to be used in the venture would have been obtained from Plaquemines Parish and determined that, as a result, La. C.C.P. art. 80 applied and, consequently, venue was proper in Plaquemines Parish. The written ruling explicitly stated that the trial court would sign a judgment in accordance with its ruling and it did so, formally transferring the case to Plaquemines Parish. Hubbard gave the trial court notice of intent to seek writs and requested the trial court to stay its transfer order pending a final resolution of the matter. The trial court granted the stay, and we are now considering it on supervisory review.

DISCUSSION
In this case sub judice, venue for an action against Pike alone would be in St. *1097 Tammany Parish, where he resides. La. C.C.P. art. 42(1). As to ELR, Inc., venue would lie in Jefferson Parish, where the corporation has its primary business office in Louisiana. La. C.C.P. art. 42(4). Finally, venue as to ELR, LLC would be proper in Winn Parish, where Hubbard is domiciled. La. C.C.P. art. 42(5). Hubbard filed his lawsuit in Winn Parish, and there lies the problem. The defendants all argued as the grounds for their separate exceptions of improper venue that venue was proper in Plaquemines Parish pursuant to La. C.C.P. art. 80. The trial court agreed, focusing on the agreement of the parties and emphasizing the fact that the mud "to be used"characterized as an immovable by the trial courtwas located in Plaquemines Parish. Thus, as reasoned by the trial court, La. C.C.P. art. 80 was applicable and venue was proper in Plaquemines Parish.
The only assignment of error raised by Hubbard is his assertion that the trial court erred in granting the defendants' exceptions of improper venue. Hubbard specifically argues that the trial court was incorrect in ruling that venue was proper in Plaquemines Parish pursuant to La. C.C.P. art. 80. We agree with that limited assertion, because we believe that the trial court's reason for sustaining the exceptions was incorrect. However, whereas we disagree with the reasoning offered by the trial court, we conclude that venue in this case was not proper in Winn Parish, but does correctly lie in Plaquemines Parish for the following reasons.
Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject. La. C.C.P. art. 41. The general rules for "proper venue as to the defendant" are found in La. C.C.P. art. 42. Louisiana C.C.P. art. 43, on the other hand, states that the general venue rules in art. 42 are subject to the exceptions contained in La. C.C.P. art. 71 through art. 85 and as otherwise provided by law, i.e., the exclusive venue provisions. Clarendon Nat. Ins. Co. v. Carter, 39,622 (La. App. 2d Cir.05/11/05), 902 So.2d 1142, writ denied, XXXX-XXXX (La.01/27/06), 922 So.2d 544. If the grounds for the objection of improper venue do not appear on the face of the plaintiff's petition, the burden is on the defendant to offer evidence in support of his position. Nitro Gaming, Inc. v. D.I. Foods, Inc., 34,301 (La.App. 2d Cir.11/01/00), 779 So.2d 817.
Ancillary venue applies when separate claims involving common or identical questions of fact share no common venue. Underwood v. Lane Memorial Hosp., 1997-1997 (La.07/08/98), 714 So.2d 715. The concept of ancillary venue allows such claims to be tried together for reasons of judicial economy and efficiency, even though venue is not proper technically for one claim or one party.
This concept has also been extended to the multiparty context when venue is proper as to only one defendant. Id.
Because venue is a question of law, on review, the appellate court should conduct a de novo review of the record. Nitro Gaming, Inc., supra.
As stated, the defendants all maintain that venue for this action is proper in Plaquemines Parish under La. C.C.P. art. 80, entitled "Action involving immovable property," and which states in pertinent part as follows:
A. The following actions may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled:
(1) An action to assert an interest in immovable property, or a right in, to, or against immovable property. . . .
*1098 Notably, the defendants, despite having the burden of proof, offered no evidence at the hearing on their exceptions of improper venue.[1] The sole evidence offered at the hearing was Hubbard's testimony, and considering his testimony regarding the facts in the instant case, we do not believe that this action by Hubbard falls within the parameters of article 80. As stated, Hubbard's lawsuit stems from the agreement he originally had with Pike to form a joint venture. He claims that the defendants breached their fiduciary duties to him and/or committed fraudulent acts to deprive him of profits of the joint venture. Hubbard prayed for "an accounting of the profits realized from the joint venture," which profits could have come from the acquisition of the mud from any undisclosed location. Thus, whereas the joint venture between the parties might have been related to the mud, the property itself is not the interest that Hubbard soughti.e., the mud in Plaquemines Parish is not the indisputable object of the agreement between the parties. The petition does not designate that the mud would even necessarily come from Plaquemines Parish. Moreover, the letter agreement presented by Diamond K to Hubbard and ELR, LLC says nothing about where the mud was located. Significantly, there is no evidence of a formal agreement between any of parties that links them with Nungesser and specific mud in Plaquemines Parish.
Hubbard seeks lost profits as a result of the alleged breach of fiduciary duty by the defendants, which duty related to the purchase and sale of what may have been immovable property, not an interest in immovable property. See Riddle v. Simmons, 40,000 (La.App. 2d Cir.02/16/06), 922 So.2d 1267, writ denied, XXXX-XXXX (La.06/02/06), 929 So.2d 1259. This agreement would be no different from a scenario where two individuals form a partnership to buy and sell real estate for investment purposes. Whereas such an agreement might be related to immovable property, certain and specific immovable property is not necessarily the direct object of such agreement. See Coleman v. Fisher Lumber Corp., 28,446 (La.App. 2d Cir.06/26/96), 677 So.2d 678, writ denied, XXXX-XXXX (La.09/03/96), 678 So.2d 558, where real estate broker brought action against various defendants in connection with a contract stemming from the purchase of a large tract of real estate located in various Louisiana parishes. Likewise, there was no specific immovable property that was the object of the agreement. Thus, we conclude that the trial court erred by finding that this was an action asserting an interest in immovable property and its conclusion that La. C.C.P. art. 80 controlled, making venue proper in Plaquemines Parish.
Next, having determined that venue is not correct under La. C.C.P. art. 80, we look to Hubbard's assertion that under La. C.C.P. art. 73 and La. R.S. 13:3203 venue for this action is proper in Winn Parish. We disagree.
Louisiana C.C.P. art. 73(A) states:
An action against joint or solidary obligors may be brought in a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant provided that an action for the recovery of damages for an offense or quasi-offense against joint or solidary obligors *1099 may be brought in the parish where the plaintiff is domiciled if the parish of plaintiff's domicile would be a parish of proper venue against any defendant under either Article 76 or R.S. 13:3203.
Louisiana R.S. 13:3203 states that "[a] suit on a cause of action described in R.S. 13:3201 may be instituted in the parish where the plaintiff is domiciled, or in any parish of proper venue." Here, the parish of Hubbard's domicile is Winn Parish, where this litigation was initially filed by Hubbard and where he claims venue is correct for this litigation.
A plaintiff invoking the provisions of La. C.C.P. art. 73 must allege sufficient facts to prove that the chosen venue is the proper venue for at least one of the joint or solidary obligors. Additionally, and importantly, the plaintiff is also required to allege facts showing that the various defendants are in fact jointly or solidarily obligated. Price v. Roy O. Martin Lumber Co., XXXX-XXXX (La.App. 1st Cir.04/27/05), 915 So.2d 816, writ denied, XXXX-XXXX (La.01/27/06), 922 So.2d 543; Curole v. Ochsner Clinic, LLC, XXXX-XXXX (La.App. 4th Cir.02/20/02), 811 So.2d 92.
Here, Hubbard fails in his burden. Notably, the record is unclear what relationship Hubbard exactly had with the two business entity defendants, ELR, LLC and ELR, Inc. Whereas, they are included with Pike in the allegations of the petition as being part of the partnership with Hubbard, the draft Partnering Agreement only indicates that Hubbard and Pike would be equal partners in the venture. Additionally, Hubbard's own testimony at the hearing on the venue exceptions indicates that his deal was with Pike originally. It is unclear exactly what connection ELR, LLC and ELR, Inc. had with Hubbard. There is no mention by Hubbard of meeting with representatives of either entity. Although Hubbard alleges that all three defendants breached their fiduciary duties and committed intentional and fraudulent acts against him, it is not stated with any detail or specificity what those acts were. And whereas Hubbard makes conclusory claims that Pike, ELR, LLC and ELR, Inc. are jointly or solidarily liable to him, he makes no factual claims that would support such an allegation. Neither did Hubbard's testimony at the hearing on the exception elaborate on the general allegations. So considering, Hubbard failed to set forth sufficient factual allegations to invoke the provisions of La. C.C.P. art. 73 in his favor. See, Curole, supra.
Thus, if La. C.C.P. art. 80 does not apply, nor art. 73, then what article does govern in this case? We look to La. C.C.P. art. 76.1, concluding, as did the trial court, that venue in this case is proper in Plaquemines Parish, albeit for a different reason than the trial court. In Hubbard's petition, we examine his claims and note that he makes both contract and tort claims against the defendants. As discussed, the petition (or the record as a whole) does not offer much detail on the exact nature of Hubbard's claims, but it is clear that Hubbard and Pike had an oral agreement to share in profits and losses associated with their joint venture in connection with the rebuilding of the levees in Plaquemines Parish. By our reading of the petition, the contractual claims are the more evident and fact specific claims in the petition. This is especially so when considering Hubbard's testimony. In connection with those contractual claims, Hubbard asserts that the defendants excluded him from activities agreed to be the subject of the joint venture and said actions were a breach of their fiduciary duty to him. Hubbard seeks an accounting of profits that would have been realized from the joint venture. Clearly, these are contractual claims, and the rest of the allegations (i.e., the tort claims) stem from this contractual relationship of the parties (at *1100 least the relationship between Hubbard and Pike).
Considering those claims, we conclude that venue is proper in Plaquemines Parish because of La. C.C.P. art. 76.1, which states that "[a]n action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract."[2]
One of the only facts that is unwavering in this litigation is that Hubbard and Pike had contracted for the purpose of providing mud "for the levee repairs and/or construction in Plaquemines Parish," as alleged in the petition (emphasis added). All the parties are in agreement that the work was to be performed on the levees in Plaquemines. That is the one non-muddy fact of this entire controversy.
Because Hubbard also makes tort claims against the defendants, potentially art. 76.1 could be in conflict with La. C.C.P. art. 74, which deals with determination of venue in tort claims. However, art. 74 requires determination of the parish where the wrongful conduct occurred (presumably, but not conclusively, Plaquemines Parish), or the parish where the damages were sustained, which is unknown from the record before us. Because we cannot determine with certainty either inquiry required by La. C.C.P. art. 74, we cannot conclude that it is in conflict with art. 76.1. Thus, it is unnecessary to consider La. C.C.P. art. 45, which addresses conflicts between the venue articles. Finally, the doctrine of ancillary venue applies to the other claims and parties for whom Plaquemines Parish would not otherwise be a proper venue, making Plaquemines Parish the proper venue for the entire action. See Nitro Gaming, Inc., supra, citing, Underwood, supra.

CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining the exceptions of improper venue filed by the defendants, Robert A. Pike, ELR, L.L.C., and Eskridge, Lueck, Reed, Inc. is affirmed. Costs of this proceeding are assessed to the plaintiff, Jerry L. Hubbard d/b/a JLH Logging. As stated in the trial court's judgment, this matter will now proceed in the 25th Judicial District Court for the Parish of Plaquemines, Louisiana.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent from the choice of Plaquemines Parish as the proper venue. This panel agreed in granting the supervisory writ that the trial court's employment of La. C.C.P. art. 80 for the selection of Plaquemines Parish was improper. Yet, the writ should never have been granted, and the plaintiff delayed, if the trial court's selection of Plaquemines Parish was the correct judgment all along for the wrong reason.
The majority's opinion suffers from indecision over the nature of the claims against the two Alabama entities, turns the plaintiff-friendly concept of ancillary venue on its ear, and ultimately mandates rigidly one venue when multiple choices abound.
Is there a cause of action against these two Alabama entities or not? In paragraph 5 of the petition, plaintiff alleges "a joint venture with Defendants for the purpose of obtaining and selling mud." In Riddle v. Simmons, 589 So.2d 89 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1316 (La.1992), this court recognized that a joint venture is analogous to a partnership. It is usually formed not for the transaction of *1101 a general partnership business but for a more specific business undertaking or venture. "No formal or specific agreement is required" for the formation of a joint venture. Id. at 92. Partners in a joint venture owe fiduciary duties and an accounting for profits. La. C.C. art. 2809. The accounting would at least represent a joint obligation of the partners.
All defendants in this case concede that plaintiff has alleged a claim for joint venture accounting. Their argument rests however upon the incorrect premise that the joint venture concerned the acquisition of immovable property rights in Plaquemines Parish requiring the exclusive and mandatory venue of La. C.C.P. art. 80. Nevertheless, the majority opinion vacillates over the existence of a partnership claim for breach of fiduciary duties and accounting. It ultimately appears to reach the merits of this partnership claim in this preliminary stage of the proceeding, ruling that without "detail or specificity" and inclusion of the Alabama entities in the draft Partnering Agreement, there is no cause of action against those entities as joint obligors in a joint venture. While I find the claims against the two Alabama entities somewhat tenuous, I am not prepared to dismiss the claims on a peremptory exception of no cause of action and neither is the majority, or, for that matter, the entities themselves.
Therefore, this is a suit against joint or solidary obligors for joint venture accounting and the broad venue of Article 73 of the Code of Civil Procedure applies. Referring to Article 73 in Underwood v. Lane Memorial Hosp., 97-1997 (La.7/8/98), 714 So.2d 715, 719, our Supreme Court recognized that the article adopts the concept of ancillary venue by permitting joint or solidary obligors to be sued in any parish where venue is proper as to only one of them. The Article 42 venue for defendant, ELR, LLC, as recognized by the majority, is Winn Parish. Likewise, the long arm statute's venue for that defendant is Winn Parish. La. R.S. 13:3203. Therefore, Article 73 allows Winn Parish as a choice for venue in this case.
Also troubling is the majority's rigid transfer of venue to Plaquemines Parish. Article 121 of the Code of Civil Procedure gives the court the option after granting the venue exception to simply dismiss the case or in the interest of justice to transfer it to a proper venue. After concluding that the claim against defendant, Pike, is different from the claims against the entities and that there is no joint or solidary relationship, the majority then chooses one of the multiple venues for Pike and directs that all defendants be sued in Plaquemines Parish. Recognizing that Plaquemines Parish may not be a proper venue as the situs of any wrongful tortious conduct of those Alabama defendants, the majority nevertheless chooses it as venue for the claims of all defendants alike under the guise of ancillary venue.
From my understanding of the Underwood ruling and the liberality of multiple and ancillary venues now prevalent in our law, the concept of ancillary venue is for the benefit and choice of the plaintiff. The majority brings ancillary venue to the aide of the defendants. If these defendants are not jointly or solidarily bound and separate categories of claims have been cumulated into one action, the action against Pike might be dismissed for improper venue under the majority's reasoning. Yet, this suit against the two Alabama entities on different claims clearly may proceed in Winn Parish. Cf., La. C.C.P. art. 463. Should ancillary venue be used to bring the two Alabama defendants to Pike's venue, or should Pike be brought to their venue in Winn Parish? The choice for using ancillary venue, a concept already built into the workings of Article 73 venue, is for the plaintiff to exercise. The plaintiff *1102 could properly choose Winn Parish as the venue in this case.

On Rehearing
Before STEWART, CARAWAY, PEATROSS, DREW and LOLLEY, JJ.
DREW, J.
The original opinion of the majority affirming the trial court's grant of the defendants' exceptions of venue is now modified on rehearing to withdraw the order transferring the case to Plaquemines Parish pursuant to La. C.C.P. art. 121. The trial court's ruling dismissing plaintiff's claims on the defendants' exceptions of venue is otherwise affirmed. The case is remanded to the Eighth Judicial District Court for Winn Parish to afford the plaintiff, pursuant to La. C.C.P. art. 932, an opportunity to amend the petition or take other action to alleviate the problems of venue affecting his claims against the various defendants.
STEWART, J., dissents from the grant of rehearing.
LOLLEY, J., dissents from the grant of rehearing.
NOTES
[1] ELR, LLC and ELR, Inc. offered the affidavit of Winston W. Edwards, a member of ELR, LLC, attached to their exception; however, said affidavit is not considered "competent" evidence as envisioned under La. C.C.P. art. 930. See Michael F. Smith, CPA v. Alford, XXXX-XXXX (La.App. 1st Cir.03/24/05), 906 So.2d 674. Notably, Hubbard objected to the consideration of the affidavit in support of the exception.
[2] Louisiana C.C.P. art. 43 lists art. 76.1 as an exception to the general venue rule of art. 42.