**Jo BOSTON and Billy Wayne Boston**

v.

**Kyle TANNER, et al.**

**Civil Action No. 97–0486.**

United States District Court, W.D. Louisiana, Shreveport Division.

Oct. 27, 1998.

Ramon Lafitte, Piper & Associates, Shreveport, LA, for plaintiffs.

Henry R. Bernstein, La. Dept. of Justice, Shreveport, LA, for defendants.

### MEMORANDUM RULING

STAGG, District Judge.

Before the court is a motion for summary judgment filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board of Supervisors") and Louisiana State Medical Center–Shreveport ("LSUMC") (hereafter, collectively referred to as the "Board of Supervisors"). For the reasons set forth below, the Board of Supervisors' motion is **GRANTED.**

## I. BACKGROUND

### A. Facts.

Jo Boston ("Mrs.Boston") was an employee of LSUMC. As such, she was required to enter the Medical Center through one of several public entries. One entry is fronted by a crescent shaped driveway next to Kings Highway. The driveway permits drivers to load and unload passengers without blocking traffic on Kings Highway. According to the complaint, on or about March 11, 1996, Mrs. Boston and her husband, Billy Wayne Boston ("Mr.Boston"), entered the driveway to drop Mrs. Boston off at work. At that point, the Bostons claim that they were subjected to abusive treatment by LSUMC police officers who targeted them because of their race. Specifically, the Bostons allege, *inter alia,* that Officer Kyle Tanner ("Officer Tanner") ordered Mr. Boston to fasten his seatbelt. Thereafter, according to the Bostons, Officer Tanner and Officer Luke Erickson ("Officer Erickson") were verbally abusive and conducted themselves in a manner that made it clear that their treatment of the Bostons was racially motivated. The Bostons claim that the officers arrested Mr. Boston and searched their car without probable cause. The Bostons further allege that African–Americans in general are intentionally targeted by Campus Police and contend that detentions and arrests are made on the basis of race rather than on any particular suspicion of criminal activity. They claim that although LSUMC has received numerous complaints regarding this racially motivated activity, no steps have been taken to remedy the alleged constitutional violations.

### B. Procedural History.

On March 11, 1997, the Bostons brought this action against the Board of Supervisors, LSUMC, Officer Tanner, and Officer Erickson seeking relief under 42 U.S.C. § 1983 for an alleged violation of their constitutional rights. *See* Record Document 1. The Boston's have also alleged state-law claims against Tanner and Erickson for false imprisonment, battery, and intentional infliction of emotional distress. *See Id.* In addition, the Boston's contend that LSUMC has violated 42 U.S.C. § 1981 by creating a racially hostile work environment for its employees. *See* Record Document 18. On August 8, 1997, the defendants answered the Bostons' complaint denying the allegations contained therein.

On October 13, 1998, the Board of Supervisors filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure contending that:

(1) the Board of Supervisors, not LSUMC, is the proper defendant in this case;

(2) the Board of Supervisors, as a subdivision of the State of Louisiana, is entitled to sovereign immunity under the Eleventh Amendment; and

(3) the Board of Supervisors is not liable under 42 U.S.C. § 1983 because it is not a "person" as stipulated in the statute.

*See* Record Document 40. On October 18, 1998, the Bostons filed a cursory opposition to the Board of Supervisors' motion.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish an essential element of that party's case; and on which that party will bear the burden of proof at trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir.1995). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993).

## B. The Boston's Claims Against The Board of Supervisors And LSUMC.

### 1. LSUMC Is Not A Proper Defendant.

■ For the purposes of analyzing the claims presented in this case, LSUMC, as an entity in and of itself, cannot be distinguished from the Board of Supervisors because the Board of Supervisors is the operative arm of the medical center. Article 8, section 7 of the Louisiana Constitution of 1974 created the Board of Supervisors and charged it with supervising and managing the institutions administered through its system. LSUMC was established under the administration of the Board of Supervisors and, therefore, the correct defendant is the Board of Supervisors and any reference to the Board of Supervisors includes LSUMC.

### 2. The Board Of Supervisors Is An Arm Of The State And, Therefore, Is Entitled To Eleventh Amendment Immunity.

■ Despite its express language,[1] it has long been established that the Eleventh Amendment bars a federal court from "en-tertain[ing] a suit brought by a citizen against his own State." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185–86 (5th Cir.1986).[2] Although a state may waive its Eleventh Amendment sovereign immunity, the State of Louisiana has not done so. *See Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"). In fact, La.R.S. 13:5106(a) provides: "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." Having established that the State of Louisiana is entitled to the full protections afforded it by the Eleventh Amendment, the issue becomes whether the state's Eleventh Amendment immunity operates to shield the Board of Supervisors from suit herein.

■ Even though the Bostons have only named the State of Louisiana as a defendant through the Board of Supervisors, the Bostons' suit may "nonetheless succumb to Eleventh Amendment immunity if the State is the real party in interest." *Richardson v. Southern University*, 118 F.3d 450, 452 (5th Cir. 1997) (citing *Edelman*, 415 U.S. at 653, 94 S.Ct. at 1350). Whether a state is the real party in interest in a suit brought against a defendant which appears to be its alter ego is determined on a case-by-case basis. *See Farias v. Bexar County Board of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 874 (5th Cir.), *cert. denied*, 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991) ("A federal court must examine the

1. The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States **by Citizens of another State,** or by Citizens or Subjects of any Foreign State." [Emphasis Added.]

2. *See also In re State of New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921):
   That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the Consti-tution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given; not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification.

particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself") (citations and quotations omitted). The Fifth Circuit has indicated that the following factors should be considered in determining whether an entity is an "arm of the state" for Eleventh Amendment immunity purposes:

(1) whether the state statutes and case law characterize the agency as an arm of the state;

(2) the source of the funds for the entity;

(3) the degree of local autonomy the entity enjoys;

(4) whether the entity is concerned primarily with local, as opposed to state-wide problems;

(5) whether the entity has authority to sue and be sued in its own name; [and]

(6) whether the entity has the right to hold and use property.

*Delahoussaye v. City of New Iberia,* 937 F.2d 144, 146 (5th Cir.1991) (quoting *Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 131 (5th Cir.1986)).[3] Although, to date, the Fifth Circuit has not addressed the specific issue of whether the Board of Supervisors is an arm of the state,[4] it has held that other Louisiana universities and their governing boards are protected from suit in federal court by the Eleventh Amendment. *See Delahoussaye,* 937 F.2d at 147 ("We agree with the district court's conclusion that these factors establish that the University of Southwestern Louisiana is an arm of the state"); *Laxey v. Louisiana Board of Trustees,* 22 F.3d 621, 623 (5th Cir.1994) ("[The University of Southwestern Louisiana] is an arm of the state and protected from suit in federal court by the Eleventh Amendment"); *Richardson v. Southern University,* 118 F.3d 450, 456 (5th Cir.1997) ("[A]ll six *Delahoussaye* factors point inescapably to the conclusion that Southern University and its Board of Supervisors are arms of the State of Louisiana, and the State is the real party in interest in this lawsuit, and that Southern and its Board are therefore entitled to Eleventh Amendment immunity").

Although not binding on this court, the Eastern District of Louisiana in *Schuth v. Louisiana State University Medical Center,* Civil Action No. 87–4191, 1989 WL 65566 (E.D.La. June 15, 1989), has held that the Board of Supervisors is an arm of the state for Eleventh Amendment immunity purposes. *Schuth* concerned a discrimination suit brought under both federal and state laws against the Louisiana State University Medical Center–New Orleans by one of its employees. In *Schuth*—a pre-*Delahoussaye* opinion—the court performed a case-specific analysis to determine whether the Board of Supervisors was entitled to state-entity status. Citing article 8, section 7 of the Louisiana Constitution of 1974,[5] La.R.S. 17:3215,[6]

---

**3.** In *Richardson v. Southern University,* 118 F.3d 450, 453 n. 8 (5th Cir.1997), the court explained: "We imported this 'test' from our diversity jurisdiction case law, in which we applied these six factors to determine whether a governmental body could be considered a 'citizen' or alter ego of a state."

**4.** It should be noted that in *Scott v. Board of Supervisors,* 336 F.2d 557 (5th Cir.1964), the Fifth Circuit dismissed an action against the Board of Supervisors on Eleventh Amendment immunity grounds. However, at the time this case was decided, article XIX, section 26, of the Louisiana Constitution of 1921 explicitly extended the state's sovereign immunity to the Board of Supervisors. As this express grant of immunity was not retained in the Louisiana Constitution of 1974, *Scott* is inapposite. The issue of whether the Board of Supervisors is entitled to state entity status under the 1974 constitution has not, as yet, been addressed by the Fifth Circuit.

**5.** Article 8, section 7, provides in pertinent part:

**(A) Creation. Powers.** The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College and Board of Supervisors of Southern University and Agricultural and Mechanical College are created as bodies corporate. Subject to powers vested by this Article in the Board of Regents, each shall supervise and manage the institutions, statewide agricultural programs, and other programs administered through its system.

**6.** This section provides in pertinent part:

The Louisiana State University system is composed of the institutions under the supervision and management of the [Board of Supervisors] as follows:

. . . .

(6) The medical center, which shall be composed of and shall administer (1) the medical and related health schools and programs located in New Orleans, Shreveport, and elsewhere, and (2) Confederate Memorial Medical Center at Shreveport.

and *Mullins v. State*, 387 So.2d 1151 (La. 1980) ("If the office is created by the legislature, or is established in the first instance by the Constitution, it is a state office"), the court found that "the Board [of Supervisors] and the Medical Center are statutorily, constitutionally and jurisprudentially state agencies." *Schuth*, 1989 WL 65566 at *9. Addressing the university's autonomy under state law, the court remarked that although

> the legislature has given the Board certain specific powers to regulate LSU Medical Center, including the power to sue and be sued; retain legal counsel; recover debt; seek and accept donations; receive, expend, or allocate all appropriated monies; borrow dollars and issue notes; determine student fees; purchase land/construct buildings; purchase and maintain equipment; lease, sell, exchange land; regulation of employment; formulate curricula; discipline students; enter into contracts; and adopt academic calendars[,] ... these powers relate strictly to the university's academic function.... [T]he Board and Medical Center have no particular autonomy and are largely dependent upon, and are an integral part of, the state's functioning.

*Id.* On the issue of funding, the court noted that the university does not have the power to raise funds—either through the issuance of bonds or the assessment of taxes—and, therefore, must rely primarily on legislative appropriation for its functioning. *See* La. Const., art. 8, § 12 ("Appropriations for the institutions of higher education shall be made to their managing boards. The funds appropriated shall be administered by the managing boards and used solely as provided by law"). This court finds the Eastern District's analysis in *Schuth* persuasive. However, in light of *Delahoussaye* and progeny, the court is compelled to address the following additional points.

■ With respect to the first *Delahoussaye* factor—the Board of Supervisors' statutory and jurisprudential status—it should be noted that La.R.S. 36:642B provides that the "functions" of the Board of Supervisors shall be administered by the state through the Department of Education. Moreover, article 8, section 5(A), of the Louisiana Constitution of 1974 provides that the Louisiana Board of Regents—consisting of 15 persons appointed by the governor with the consent of the Louisiana senate—shall oversee the Board of Supervisors. With respect to the second factor—the Board of Supervisors' source of funding—article 12, section 10, of the state constitution and La.R.S. 13:5109B(2) provide that money judgments rendered against the state are payable "only out of funds appropriated for that purpose by the legislature." With respect to the third factor—the degree of local autonomy the institution enjoys—La.R.S. 17:1516 provides that the Board of Supervisors shall administer the affairs of LSUMC in Shreveport. With respect to the fourth factor—whether the entity is concerned primarily with local, as opposed to state-wide problems—it should be noted that the Board of Supervisors supervises and administers institutions in Baton Rouge, New Orleans, Alexandria, Eunice, and Shreveport in addition to programs throughout the state. *See* La.R.S. 17:3215. Moreover, La.R.S. 17:3220 expressly provides that "the Louisiana State University System [is] established and maintained to serve the educational needs of the people of the State." And finally, with respect to the last two *Delahoussaye* factors, the fact that the Board of Supervisors may sue and be sued, *see* La.R.S. 17:3351(A)(1), and hold and use property, *see* La.R.S. 17:3351(A)(6), (8), & (9), "does not mean that these two factors weigh against a finding of sovereign immunity." *See Richardson v. Southern University*, 118 F.3d 450, 456 (5th Cir.1997).

Based on this analysis and Fifth Circuit jurisprudence, the court finds that the Board of Supervisors is an arm of the State of Louisiana and as such, is entitled to the protections of the Eleventh Amendment.

**3. The Bostons' Causes Of Action Under 42 U.S.C. § 1983 And 42 U.S.C. § 1981 Against The Board of Supervisors Are Also Subject To The Eleventh Amendment Bar.**

The Board of Supervisors contends that it cannot be sued under 42 U.S.C. § 1983 because only "persons" are subject to suit under section 1983. The Board argues that as it is not a "person," it is not subject to suit.

The court need not address this issue because it is faced with a jurisdictional bar created by the Eleventh Amendment. Although Congress has the power with respect to the rights protected by the Fourteenth Amendment to the United States Constitution to abrogate the states' Eleventh Amendment immunity, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996),[7] the Supreme Court has recognized that in enacting 42 U.S.C. § 1983,[8] Congress did not override this jurisdictional bar. *See Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979) ("[N]either logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 [Civil Rights] Act compels, or even warrants, a leap from this proposition to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States"). The Supreme Court has further recognized that 42 U.S.C. § 1981 [9]—also enacted as part of the Civil Rights Act of 1871—is subject to the same limitations as section 1983. *See Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S.Ct. 2702, 2721, 105 L.Ed.2d 598 (1989) ("We think the history of the 1866 Act and the 1871 Act ... indicates that Congress intended that the explicit remedial provisions of section 1983 be controlling in the context of damages actions brought against state actors alleging violations of rights declared in section 1981"). Although the Supreme Court has not expressly held that state governmental entities are entitled to Eleventh Amendment immunity in section 1981 actions, the Fifth circuit has. *See Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir.1981) ("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity. This indicates that Congress did not intend by the general language of the Civil Rights Act of 1871 to invoke its fourteenth amendment power [to abrogate the state's sovereign immunity]"). Therefore, all claims asserted against LSUMC and the Board of Supervisors are **DISMISSED WITH PREJUDICE.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

### ORDER

Based on the foregoing Memorandum Ruling;

**IT IS ORDERED** that the motion for summary judgment filed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "Board of Supervisors") be and is hereby

---

7. The Court in *Seminole Tribe* explained:

   In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), we recognized that the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution. We noted that section 1 of the Fourteenth Amendment contained prohibitions expressly directed at the States and that section 5 of the Amendment expressly provided that "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." We held that through the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment and therefore that section 5 of the Fourteenth Amendment allowed Congress to abrogate the immunity from suit guaranteed by that Amendment.
   *Id.* at 59, 116 S.Ct. at 1125. In *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the Court held that the Interstate Commerce Clause (U.S. Const., Art. I, § 8, cl.3) also granted Congress the authority to abrogate the states' Eleventh Amendment immunity. However, the Court in *Seminole Tribe* reversed this holding, leaving section 5 of the Fourteenth Amendment as the *only* recognized means by which Congress may overturn the states' immunity to suit in federal court.

8. Section 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

9. Section 1981 provides:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**GRANTED** and that all claims asserted against Louisiana State University Medical Center–Shreveport and the Board of Supervisors be and are hereby **DISMISSED WITH PREJUDICE.**