JOHNSON, Justice.
 
 [1]
 

 _JjWe granted this writ application to address the proper venue and the application of LSA-R.S. 13:5104 in a suit where a state agency is no longer a party to the lawsuit. Initially, the Plaintiffs filed suit against several Defendants,
 
 [2]
 
 who allegedly closed the state hospital in New Orleans, known locally as Avery C. |2Alexander Charity Hospital of New Orleans (“Charity Hospital”), without seeking legislative approval, in violation of LSA-R.S. 17:1619.3(B).
 

 In this class action suit, the Plaintiffs argue that venue is proper in Orleans Parish under LSA-R.S. 13:5104 because the operative facts giving rise to this cause of action all occurred in New Orleans, and Charity Hospital, which is the subject matter of this case, is located in New Orleans. In response, the Defendants filed, among other exceptions not at issue in this writ application, a Dilatory Exception of Lack of Procedural Capacity and a Declinatory Exception of Improper Venue, arguing that the only proper venue for this suit is East Baton Rouge Parish where the LSU Board of Supervisors is located, because the suit involves an administrative decision by a state agency. The trial court denied both exceptions. The court of appeal denied the writ as it related to the Exception of Improper Venue, but granted the writ as it related to the Exception of Lack of Procedural Capacity, and dismissed LSU HSC-NO as a party to the litigation, leaving only the individually-named administrators as Defendants. The Plaintiffs did not seek review of the court of appeal decision. The Defendants then filed a writ application with this Court, which we granted.
 
 LeBlanc v. Thomas,
 
 08-2869 (La.2/13/09), 2 So.3d 432.
 

 FACTS AND PROCEDURAL HISTORY
 

 In this class action suit, the Plaintiffs,
 
 [3]
 
 who are residents of Orleans Parish and the surrounding area, filed the instant suit in Civil District Court for the Parish of | ^Orleans against LSU HSC-NO and the individually-named administrators of the Medical Center of Louisiana, the LSU Health Sciences Center and the LSU Health Care Services Division.
 
 [4]
 
 In the
 
 *243
 
 Petition for Injunctive and Declaratory Relief, the Plaintiffs sought a determination that Charity Hospital was illegally closed after Hurricane Katrina in violation of LSA-R.S. 17:1519.3(B)
 
 [5]
 
 and requested that the court reopen it or the Defendants timely submit a plan detailing how and under what schedule the care terminated by Charity Hospital’s closure will be replaced. Initially, in their petition, the Plaintiffs alleged that venue was proper in Orleans Parish pursuant to LSA-R.S. 13:5104, stating:
 

 The operative facts giving rise to this case all occurred in New Orleans, Louisiana, and Charity Hospital — the subject matter of this complaint — is located in New Orleans. Plaintiffs, moreover, are residents of New Orleans and have been denied health care in New Orleans. Plaintiffs are low income and do not have the means to adjudicate this case in any other venue. In fact, many Plaintiffs have medical conditions that make traveling long distances extremely difficult, if not impossible. Likewise, Plaintiffs’ attorneys are located in New Orleans and are handling this case on a pro bono basis.
 

 The Plaintiffs specifically allege that the Chancellor of LSU HSC-NO issued the order to close Charity Hospital and that his employees followed his instructions and Lclosed the building. Additionally, the Plaintiffs allege that venue was proper in Orleans Parish because the Defendants, in their official capacities as managers of Charity Hospital, located in New Orleans, made an administrative decision in Orleans Parish to close the hospital without legislative approval.
 

 In response, the Defendants filed several exceptions, including a Declinatory Exception of Improper Venue, pursuant to LSA-C.C.P. art. 925, and a Dilatory Exception of Lack of Procedural Capacity pursuant to LSA-C.C.P. art. 926. In the Exception of Lack of Procedural Capacity, the Defendants argued that LSU HSC-NO lacked procedural capacity, and that the Board of Supervisors of Louisiana State University & Agricultural and Mechanical College (“the Board”) was the proper party to sue. The Defendants pointed out that in 1997, the Louisiana State University Health Services Division Act granted authority to the Board to own and operate the state hospitals. See, LSA-R.S. 17:1519.2.
 
 [6]
 
 The Act specifically made the Board responsible for the operation and management of the LSU HSC-NO. Interestingly, prior to 1997, Charity Hospital did have the authority to sue or be sued under LSA-R.S. 46:759. However, LSA-R.S. 46:759 was repealed by Act No. 3, Section 8 of 1997. Particularly,
 
 *244
 
 Section 8 of Acts 1997, No. 3 repealed Part II, “Charity Hospital of Louisiana in New Orleans,” containing LSA-R.S. 46:751 to 46:776 and | ^abolished the Louisiana Health Care Authority and transferred Charity Hospital to the Louisiana Board of Supervisors to be operated by Louisiana Medical Center.
 

 After a hearing, the trial court denied the Defendants’ exceptions. In oral reasons for judgment, the trial court stated:
 

 It’s the court’s belief that the Health Sciences Center New Orleans is, in fact, an agency of the State, and it’s an agency located here in New Orleans, that the cause of action arose here, and they could be sued here.
 

 The Fourth Circuit Court of Appeal dismissed LSU HSC-NO as a party to the lawsuit after concluding that LSU HSC-NO lacked the procedural capacity to sue or be sued. The court of appeal relied on
 
 Boston v. Tanner,
 
 29 F.Supp.2d 743 (W.D.La.1998) in concluding that LSUMC (now LSU HSC) was not a proper defendant, stating:
 

 For the purposes of analyzing the claims presented in this case, LSUMC, as an entity in and of itself, cannot be distinguished from the Board of Supervisors because the Board of Supervisors is the operative arm of the medical center. Article 8, section 7of the Louisiana Constitution of 1974 created the Board of Supervisors and charged it with supervising and managing the institutions administered through its system. LSUMC was established under the administration of the Board of Supervisors and, therefore, the correct defendant is the Board of Supervisors and any reference to the Board of Supervisors includes LSUMC.
 

 Id.
 
 at 745.
 

 The court concluded “it is clear that the legislature placed in the [LSU Board of Supervisors], and not the individual institutions under its control, the juridical power to sue and be sued.” While acknowledging that the Chancellor of LSU HSC-NO may be able to exercise the power to sue and be sued on behalf of the Board, the court held that LSU HSC-NO itself had no authority to act.
 

 |,¡Because the Defendants failed to raise Exceptions of Lack of Procedural Capacity on behalf of the individual Defendants in the trial court, this argument was not considered. The court of appeal also denied the Exception of Improper Venue, relying on this Court’s decision in
 
 Colvin,
 
 stating:
 

 In
 
 Colvin v. Louisiana Patient’s Compensation Fund Oversight Board,
 
 06-1104 (La.1/17/07), 947 So.2d 15, plaintiffs sought declaratory and monetary relief against the PCFOB for negligent adjustment and administration of their malpractice claims....
 

 [[Image here]]
 

 [T]he Supreme Court adopted the test established by this court in
 
 Avenal v. State, Dept. Of Natural Resources,
 
 95-0836 (La.App. 4 Cir. 11/30/95), 668 So.2d 1150, that “the place where the operative facts occurred which support plaintiffs entitlement to recovery is where the cause of action arises for venue purposes under La. R.S. 13:5104(A).”
 
 Colvin,
 
 p. 13, 947 So.2d at 24 (internal citations and brackets omitted.)
 

 Accordingly, the [Supreme] Court ruled that the proper venue was East Baton Rouge Parish as “the operative facts which support plaintiffs’ entitlement to recovery, i.e., the PCFOB’s administrative decision not to settle their claims, all occurred in East Baton Rouge Parish.”
 
 Id.,
 
 p. 14, 947 So.2d at 24.
 

 Applying
 
 Colvin,
 
 the court of appeal found no error in the trial court’s decision to deny the exception of improper venue.
 
 *245
 
 The court of appeal found that the Defendants failed to present factual evidence as to where the operative facts occurred, i.e., whether the decision to close the hospital was made in East Baton Rouge Parish or Orleans Parish, and whether the Board of Supervisors or the Chancellor of LSU HSC-NO actually made the decision to not reopen the facility.
 

 On March 6, 2009,
 
 [7]
 
 the Plaintiffs amended their petition, which once read:
 

 |776. Defendant Larry Hollier, Chancellor, LSU Health Sciences Center-New Orleans is sued in his official capacity. Mr. Hollier resides in New Orleans.
 

 The amended pleading now reads:
 

 76. Defendant Larry Hollier, Chancellor, LSU Health Sciences Center-New Orleans is sued in his official capacity as the statutorily designated agent of the Louisiana State University (LSU) Board of Supervisors under La. R.S. 17:1519.5. Dr. Hollier resides in New Orleans.
 

 DISCUSSION
 

 Since the Plaintiffs did not seek review of the appellate court’s decision to dismiss LSU HSC-NO as a party to the litigation, the only issue before this Court is whether the court of appeal erred in denying the Defendants’ Exception of Improper Venue.
 

 The Defendants argue that the lower courts have erroneously interpreted the venue statute LSA-R.S. 13:5104 to find that venue is proper in Orleans Parish. The Defendants argue that under LSA-R.S. 13:5104 venue is only proper in East Baton Rouge Parish, where the state agency that has the authority to make an administrative decision to close Charity is located. The Defendants argue that venue is mandatory in East Baton Rouge Parish, according to
 
 Colvin, id.,
 
 irrespective of which employee of the state agency made the decision to close the facility, or where that person may be domiciled. The Defendants further argue that the Plaintiffs’ cause of action based on the Defendants’ alleged failure to obtain legislative approval prior to the closure of Charity Hospital was an omission which could have only occurred in East Baton Rouge Parish.
 

 |RThe Plaintiffs allege that the Defendants misconstrue the Court’s holding in
 
 Colvin.
 
 The Plaintiffs maintain that the Court did not find as a matter of law that any lawsuit contesting a decision by a state agency or employee requires that the suit be brought in East Baton Rouge Parish, as the Court clearly stated that venue is a factual matter.
 
 Id.
 

 This Court has determined that the Louisiana Civil Code of Procedure “articles governing venue are based on legislative considerations for allocating cases, according to the particular action and the particular parties, among the various parishes which have an interest in the action ...”
 
 Underwood v. Lane Memorial Hospital,
 
 97-1997 (La.7/8/98), 714 So.2d 715, 716. This Court has recognized venue as a “convenience factor as opposed to a jurisdictional factor.”
 
 Id.
 

 In determining the proper venue, the general principles of venue are usually analyzed to determine the proper parish where an action may be tried before a judge or a jury. See, LSA-C.C.P. art. 42. The general rules of venue provide a “home base” where the defendant must be sued, which is subject to the numerous exceptions.
 
 Id.
 
 This Court has determined that a suit against a state agency is not governed by the general rules of venue
 
 *246
 
 or its exceptions; instead, LSA-R.S. 13:5104 governs, unless a more specific venue governing a specific state agency is found elsewhere in the statutes.
 
 Colvin,
 
 947 So.2d at 22.
 

 LSA-R.S. 13:5104 provides, in pertinent part, that:
 

 A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises. [Emphasis added.]
 

 RThis Court noted in
 
 Colvin, swpra,
 
 that in determining the parish where the cause of action arises, we must focus on the place where the “operative facts occurred which support plaintiffs entitlement to recovery.” Prior to determining where the operative facts occurred, the first pre-requi-site of LSA-R.S. 13:5104 must be met, i.e., the suit must be filed against the State of Louisiana or a state agency. Here, the only state agency named in this suit, LSU HSC-NO was dismissed from the suit.
 

 We next consider the amended petition, in which Dr. Hollier was sued in his official capacity as Chancellor of the LSU HSC-NO, and the statutorily designated agent for the LSU Board of Supervisors. The U.S. Supreme Court in
 
 Kentucky v. Graham,
 
 473 U.S. 159, 165-166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), quoting
 
 Monell v. New York City Dept. of Social Services,
 
 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978), stated “Official-capacity suits, in contrast, ‘generally represent only another way of pleading an action against an entity of which an officer is an agent.’ ” See,
 
 Sommer v. State Department of Transportation,
 
 758 So.2d 923, 936 (La.App. 4th Cir.2000). We therefore conclude, based on our jurisprudence, that when Plaintiffs amended their petition and sued Dr. Hollier in his official capacity, they were really suing the LSU Board of Supervisors.
 

 Now, that the LSU Board of Supervisors has been effectively added as party defendant by amended pleadings, we can now consider LSA-R.S. 13:5104(A), and whether a suit against the state agency based on an administrative decision can be brought in any parish other than East Baton Rouge Parish.
 

 According to
 
 Colvin,
 
 this Court has determined that “when the Plaintiffs are challenging a ministerial [or administrative] action of a state agency ... and the | mconduct complained of occurred in Baton Rouge where the decisions are made,” East Baton Rouge Parish is the only proper venue as “the parish where the decisions are made should review all complaints against that agency rather than have courts all over the state review the actions.”
 
 Id.
 
 at p. 23. Stated differently, “where a state agency’s ministerial or administrative actions are called into question, East Baton Rouge offers the only appropriate forum, as that is both ‘the district in which the state capital is located’ and ‘the district court having jurisdiction in the parish in which the cause of action arises’.”
 
 Anderson v. State,
 
 05-0551(La.App. 3 Cir. 11/2/05), 916 So.2d 431, 435,
 
 writ denied,
 
 05-2493 (La.6/2/06), 929 So.2d 1243. This Court ruled that LSA-R.S. 13:5104(A):
 

 [W]ould render exceptionally rare the circumstances under which a state entity who opposes litigation away from home might be required to litigate issues of great import statewide, as opposed to causes of action whose immediate consequences merely reverberate locally.
 

 See,
 
 Abshire v. State, through Department of Insurance,
 
 93-923 (La.App. 3 Cir. 4/6/94), 636 So.2d 627, 629-630,
 
 writ de
 
 
 *247
 

 nied,
 
 94-1213 (La.6/24/94), 640 So.2d 1332. In
 
 Abshire,
 
 where the Plaintiffs sued the Department of Insurance for fraud and mismanagement in Rapides Parish, the court found that because the administrative actions of the state agency were challenged, East Baton Rouge Parish was the only appropriate forum in which to sue. 636 So.2d at 629. Also, in
 
 Anderson, supra,
 
 where the Plaintiffs filed suit against the Governor and the Legislature for failing to properly fund the indigent defender system in Calcasieu Parish, the court held that venue was only proper under LSA-R.S. 13:5104(A) in East Baton Rouge Parish. In
 
 Cameron Parish Police Jury v. McKeithen,
 
 02-1202 (La.App. 3 Cir., 10/14/02), 827 So.2d 666,
 
 writ denied,
 
 02-2547, 02-2548 (La.10/23/02), 827 So.2d ]n1148, 1149, where suit was filed against the Secretary of State seeking to enforce his ministerial duties, the court held that East Baton Rouge Parish was the proper venue.
 

 On the other hand, this Court clearly explained in
 
 Colvin,
 
 that there may be instances where suits are filed against state agencies, and the venue is proper in a parish other than East Baton Rouge Parish. These instances exist “where the operative facts occurred which support plaintiffs entitlement to recovery” and the Plaintiffs are not contesting the ministerial or administrative duties of the state agency. See, 947 So.2d at 26.
 

 In this case, the Plaintiffs continue to argue that the cause of action arose in Orleans Parish where the Chancellor, Dr. Hollier resides, where Charity Hospital is located, and where the decision was made to close Charity Hospital. Following our prior decision in
 
 Colvin,
 
 we conclude that the decision to close Charity Hospital (or not reopen the facility) was an administrative decision. The controlling factor is not the location of the person issuing the order. In cases against state agencies involving administrative decisions, East Baton Rouge Parish is the district having jurisdiction, and the district in which the cause of action arises under LSA-R.S. 13:5104(A). See,
 
 Colvin, supra.
 
 Accordingly, we find that East Baton Rouge Parish is the proper venue for a suit against a state agency where an administrative decision is involved. For the foregoing reasons, we reverse the court of appeal and grant the Defendants’ Exception of Improper Venue. This action is transferred to East Baton Rouge Parish.
 

 REVERSED and RENDERED.
 

 [1]
 

 . Retired Judge Philip Ciaccio, assigned as Justice ad hoc, sitting for Justice Chet D. Traylor.
 

 [2]
 

 . In the Petition for Injunctive and Declaratory Relief, the named Defendants were: 1) Dwayne Thomas, who was the Chief Executive Office ("CEO”) of the Medical Center of Louisiana at New Orleans, Louisiana State University Hospitals, Health Care Services Division, sued in his official capacity: 2) Lariy Hollier, Chancellor, LSU Health Sciences Center-New Orleans, sued in his official capacity; 3) Michael K. Butler, Acting Chief Executive Officer, Louisiana State University Health Care Services Division, sued in his official capacity; and 4) Louisiana State University Health Sciences Center-New Orleans ("LSU HSU-NO”).
 

 [3]
 

 . According to the Petition, the Plaintiffs “were statutorily entitled to receive medical care at Charity Hospital because they are uninsured and low-income. Further, each has a serious continuing ‘chronic’ medical condition that would have caused them to go to Charity Hospital for care if it had not been closed. The unlawful closure violated their entitlement to care, and they are unable to reasonably obtain equivalent care from any other source."
 

 [4]
 

 . For all intent and purposes, LSU Health Sciences Center and the LSU Health Care Services Division are one and the same. See, LSA-R.S. 17:1519.1, which provides in pertinent part:
 

 (5) "Health care services division” or “division” means the organizational unit of the LSU Health Sciences Center at New
 
 *243
 
 Orleans comprised of the hospitals and administrative personnel immediately responsible for the operation of the division.
 

 [5]
 

 . La. R.S. 17:1519.3(B) provides:
 

 B. No hospital nor any emergency room may be closed without legislative approval. Such approval may be granted by the legislature either by concurrent resolution or by appropriate action in the General Appropriation Act.
 

 [6]
 

 . LSA-R.S. 17:1519.2 provides, in pertinent part, that:
 

 A. (1) The board shall own and operate the hospitals set forth in Subsection B, and any successor entities, in its discretion, as more specifically provided in this Subpart.
 

 [[Image here]]
 

 B. (1) The LSU Health Sciences Center-New Orleans shall be responsible for the following hospitals, including all programs and facilities thereof:
 

 (a) Medical Center of Louisiana at New Orleans.
 

 [[Image here]]
 

 (2) Operation and management of the LSU HSC-NO hospitals shall be the responsibility of the board pursuant to this Sub-part.
 

 [7]
 

 . The parties have acknowledged and do not dispute that the petition was amended and is part of the pleadings contained in the record before this Court.”