DREW, J.
|, These consolidated cases involve route selection procedures utilized to build a proposed extension of Louisiana Highway 3132 in Caddo Parish.
In Nos. 49,558-CW and 49,559-CW, plaintiffs, Willis-Knighton Medical Center (“Willis-Knighton”), Finish 3132 Coalition, *398 L.L.C. (“Finish 3132”), and Karen Wells, seek supervisory review of an interlocutory order transferring the cases from the 1st Judicial District Court in Caddo Parish to the 19th Judicial District Court, in East Baton Rouge Parish.
In Nos. 49,282-CA and 49,283-CA, Wells appeals a judgment sustaining an exception of no right of action that resulted in her dismissal from the lawsuits.
We affirm the district court’s ruling on the exception of venue and reverse the judgment dismissing Wells.
FACTUAL BACKGROUND
This is the second appeal considered by this court in this dispute. The first appeal, Willis-Knighton Health Sys. v. Northwest La. Council of Gov’ts, 48,141, 48,142 (La.App.2d Cir.4/17/13), 116 So.3d 55, writ denied, 2013-1325 (La.11/15/13), 125 So.3d 1103 (“Willis-Knighton I”), affirmed the denial of a preliminary injunction in favor of Willis-Knighton and Wells,[1] and in so doing set out the- facts and procedural history of the cases. Although many of those facts need not be repeated to decide the issues before us, some review is required.
Louisiana Highway 3132 (“Hwy 3132”) is the partially completed southern half of a planned loop of roadway around the City of Shreveport. | gThis loop is located entirely within Caddo Parish. Presently, Hwy 3132 terminates at its intersection with Louisiana Highway 523, also known as Flournoy-Lucas Road. Immediately southeast of this intersection is a residential neighborhood, Twelve Oaks, where plaintiff Wells owns a home.' Just to the south of the intersection lies another residential development, Esplanade, owned by entities connected to developer Tim Lar-kin; [2] that neighborhood extends to the south close to Railsback Road. Adjacent to the northern part of Esplanade is The Glen, a retirement development. Extension of Hwy 3132 to the south, and the choice of the route for the extension to connect that highway to the Port of Shreveport, will potentially impact the residential neighborhoods, The Glen, arid the other landowners in the area.
The zoning restrictions for the Esplanade neighborhood included a stipulation that a road connecting Flournoy-Lucas Road to Railsback Road be constructed in compliance with all local, state, and federal guidelines.[3] The location and construction of this road, named Forbing Ridge Road, generated much of the instant controversy.
-JjjWhen The Glen decided in 2012 that it would not participate in a shared access plan for Forbing Ridge Road, Larkin, who *399 had DOTD approval to connect the road to the state highway, proceeded with routing and building the road. On April 12, 2012, Larkin recorded a document in the Caddo Parish public records dedicating a public servitude of passage between Flournoy-Lucas Road and the Bayou Pierre bridge.[4] On November 9, 2012, Wells recorded an acceptance of this servitude on behalf of herself and the public.
Meanwhile, Willis-Knighton filed two suits in Caddo Parish related to the construction of Forbing Ridge Road.
The first suit, Docket No. 562,337, sought declaratory and injunctive relief and included as defendants:
• Northwest Louisiana Council of Governments (NLCOG);
• J. Kent Rogers, executive director of the NLCOG, in his official and individual capacities;
• Shreveport Metropolitan Planning Commission of Caddo Parish (MPC);
• Louisiana Department of Transportation and Development (DOTD);
• Shreveport City Council;
• Buehart>-Horn, Inc. (a consulting firm);
It* Shreveport Mayor Cedric Glover, individually and in his capacity as may- or;
• Ron Norwood, individually and in his capacity as Shreveport’s city engineer; and
• the Larkin parties.
That suit demanded, inter alia, that development of Esplanade be halted until the route for Hwy 3132 was finally determined.
The second suit, Docket No. 564,161, sought temporary and permanent restraining orders relating to the construction of Forbing Ridge Road, and made various allegations of wrongdoing by the mayor and city engineer in allowing construction of the road. These suits were ultimately consolidated by the trial court. In December 2012, Wells filed a petition of intervention in the second suit.
Various parties asserted exceptions.
DOTD, a state agency, objected to venue in Caddo Parish. The agency urged that under the mandatory venue provision of La. R.S. 13:5104(A),[5] venue against it under these circumstances was proper only in East Baton Rouge Parish, the location of its headquarters. Notably, the governmental defendants in Caddo Parish, each also subject to mandatory venue provisions, explicitly waived their right to be sued in Caddo Parish.
|sThe trial court overruled DOTD’s exception. Finding merit in DOTD’s argu *400 ment that venue against the agency was proper only in East Baton Rouge Parish, this court granted writs, reversed the trial court, sustained the exception, and remanded the case to the district court to effect the transfer. Willis-Knighton Med. Ctr. v. Northwest La. Council of Gov’ts, 48,881 (La.App.2d Cir.10/10/13) (unpublished), writ denied, 2013-1325 (La.11/15/13), 125 So.3d 1103.
The trial court then considered whether to transfer the entire case, or only the case against DOTD, to East Baton Rouge Parish. On June 16, 2014, citing the portion of this court’s order referring to the Caddo defendants’ waiver of venue in Caddo Parish, the trial court ordered the transfer of the entire case to the 19th Judicial District Court. Plaintiffs sought writs, and this court granted certiorari.
In addition, the Larkin parties raised an objection of no right of action as to Wells’ intervention, asserting that she had offered “no explanation whatsoever as to how the construction of Forbing Ridge Road will have any personal impact on her.” The Larkin parties argued that Wells had filed what purported to be an acceptance of the servitude of passage for the road, yet now opposed the building of a road. The Larkin parties stated that, instead of a road, Wells said in a letter that she wanted the servitude used as a path for walking and jogging. They further urged that the servitude conveyed no personal benefit to Wells and that she was not entitled to enforce any public right in the servitude in the absence of a showing of a personal grievance or personal interest in the outcome.
|fiThe exception of no right of action was heard in October 2013, at which hearing Wells testified that:
• she lives in Twelve Oaks subdivision in Caddo Parish and pays taxes to the City and Parish;
• her yard backs up to Bayou Pierre on the “western or southern” border of her subdivision;
• she accepted the servitude of passage filed by Larkin;
• she and a friend rode four-wheelers on the property to the southwest of her home;
• she has seen other people using this property for walking, biking, and jogging;
• she can see Forbing Bridge Road from her property;
• she previously had been inconvenienced in her egress from her neighborhood by construction traffic entering and leaving Esplanade;
• four of the proposed routes for Hwy 3132 impact Twelve Oaks subdivision, and three of the routes run along the southwestern boundary of the subdivision and “share a boundary with [her] property”;
• the construction of the Hwy 3132 extension along the boundary of her property would affect her use and enjoyment of her property and affect the value of her property; and
• she does not want any extension of Hwy 3132 to be built.
The trial court sustained the exception of no right of action against Wells, holding that she had no right to bring an action against the defendants and, even if she had the right, she likely waived it by accepting the servitude. On October 23, 2013, the trial court signed a judgment dismissing Wells’ suit. She now appeals.[6]
*401 ^DISCUSSION

Exception of Venue, Nos. 49,558-CW and 49,559-CW

Plaintiffs argue the trial court erred by transferring the entire case, rather than only the case against DOTD, to the 19th Judicial District Court.
In particular, they argue:
• Caddo Parish is a parish of proper venue for the claims against all defendants other than DOTD;
• La. C.C.P. arts. 462-464 preclude the transfer of the remainder of the case; and
• No other provision of the Code of Civil Procedure, venue or otherwise, authorizes the transfer of the remainder of the case.
We consider this to be an issue of law and thus review the district court’s ruling de novo. Industrial Roofing & Sheet Metal Works v. J.C. Dellinger Mem. Trust, 32,048 (La.App.2d Cir.8/20/99), 751 So.2d 928, writ denied, 1999-2948 (La.12/17/99), 752 So.2d 166.
In Black v. St. Tammany Parish Hosp., 2008-2670 (La.11/6/09), 25 So.3d 711, 714-15, the court explained:
[V]enue refers to the parish where an action may properly be brought and tried under the rules regulating the subject. Underwood v. Lane Memorial Hosp., 97-1997, p. 3 (La.7/8/98), 714 So.2d 715, 716; La.Code Civ. Proc. art. 41. Venue provisions are based on legislative considerations for allocating cases, according to the particular action and the particular parties, among the various parishes, which have an interest in the action (over which some Louisiana court has the constitutional power to exercise jurisdiction). Colvin v. Louisiana Patient’s Compensation Fund Oversight Bd., 06-1104, p. 3 (La.1/17/07), 947 So.2d 15, 18; Underwood, 97-1997 at p. 3, 714 So.2d at 716.
Although the original concept of venue was that “one must be sued before his own judge,” this concept has become anachronistic with the ever-increasing number of legislative exceptions to venue at the party’s domicile. Colvin, 06-1104, at p. 3, 947 So.2d at 18; Underwood, 97-1997 at p. 3, 714 So.2d at 716-17. On this point, we have explained:
The 1960 Code of Civil Procedure divided the rules of venue into three categories: (1) Article 44 provides a non-waivable mandatory venue for actions such as nullity of judgment; (2) Articles 78 through 83 provide a preferred but waivable venue which governs exclusively when the rule conflicts with any article except Article 44; and (3) Article 42 provides a general venue in which the defendant must be sued at his “home base,” but is subject to numerous exceptions in Articles 71 through 77, which provide specific optional venues that the plaintiff may choose as an alternative to the venue in Article 42.
Underwood, 97-1997 at p. 3, 714 So.2d at 717. Consequently, the rules of venue today are less designed to provide protection for the defendant, who has no constitutional right to be tried in a particular forum, and more designed to allocate cases among parishes with an interest in the proceeding so as to provide for efficient disposition of caseloads. Colvin, 06-1104 at p. 4, 947 So.2d at 18; Underwood, 97-1997 at p. 3, 714 So.2d at 717.
Accordingly, the venue provisions for suits against political subdivisions set forth in La.Rev.Stat. § 13:5104(B) specify two parishes in which such entities can be sued. Colvin, 06-1104 at p. 4, *402 947 So.2d at 18; Underwood, 97-1997 at p. 5, 714 So.2d at 718. The first is the parish in which the political subdivision is located, i.e., the classic home base provision. Underwood, 97-1997 at p. 5, 714 So.2d at 718. The second is the parish in which the cause of action arises, i.e., the more modern interest/efficiency provision. Id.
In this court’s previous disposition of DOTD’s exception of venue, Nos. 49,558-9 CW, we explained:
The plaintiffs’ allegations concerning LDOTD’s wrongful conduct relate to the agency’s decisions and actions that took place at its headquarters in East Baton Rouge Parish. See, e.g., Roger v. Anpac Louisiana Ins. Co., 2010-1099 (La.11/19/10), 50 So.3d 1275, and Colvin v. Louisiana Patient’s Compensation Fund Oversight Board, 2006-1104 (La.1/17/07), 947 So.2d 15: “many courts had held that where a state agency’s ministerial or administrative actions are called into question, East Baton Rouge Parish is the only appropriate Igforum.” Roger at 1276. See also Impastato v. State, Division of Administration, 2010-1998 (La.11/19/10), 50 So.3d 1277, and LeBlanc v. Thomas, 2008-2869 (La.10/20/09), 23 So.3d 241. Thus, venue as to LDOTD is proper only in East Baton Rouge Parish per La. R.S. 13:5104(A).
In an appropriate case, ancillary venue is available to maintain venue in a judicial district where venue is proper as to one or more defendants but not another. Underwood v. Lane Memorial Hospital, 97-1997 (La.7/8/98), 714 So.2d 715; Shreveport Citizens for Good Government v. City of Shreveport, 40,570 (La.App.2d Cir.9/9/05), 910 So.2d 482, writ denied, 2005-2353 (La.1/9/06), 918 So.2d 1022. However, we conclude that the doctrine of ancillary venue is inapplicable in a case where defendants who are subject to mandatory venue provisions waive their objection to venue in favor of another defendant who objects to venue based upon the same or similar but conflicting mandatory venue provision. Although the venue requirements of La. R.S. 13:5104 are mandatory, they are waivable. See Franques v. Evangeline Parish Police Jury, 625 So.2d 157 (La.1993). Because LDOTD objects to venue and the other governmental defendants have waived their objections, LDOTD’s exception must be sustained.
Although applicants interpret this court’s statement about the inapplicability of ancillary venue to mean that the doctrine cannot be applied in this case generally, that interpretation is too narrow. In our earlier ruling, the issue presented was whether venue was proper as to DOTD in Caddo Parish because both its headquarters and its actions took place in East Baton Rouge Parish. Ancillary venue was inapplicable to keep the case against DOTD in Caddo Parish under these circumstances because the other governmental defendants waived the mandatory venue provisions in their favor that would otherwise have kept the case in Caddo Parish.
The doctrine is perfectly applicable, however, to the Caddo governmental defendants who, by waiving their own right to mandatory venue in Caddo Parish, conceded that the case against them should proceed |inin East Baton Rouge Parish along with the case against DOTD. The Caddo defendants’ waiver of the mandatory venue provision in their favor is the reason that ancillary venue cannot keep DOTD in Caddo Parish and the reason the case against the Caddo defendants must be heard in the 19th JDC. We also note that the nongovernmental defendants have *403 waived any objection they may have to the transfer.
DOTD is an indispensable party to this litigation, much of which relates directly or indirectly to DOTD’s procedures, analyses, and decisions for the highway’s route. Insofar as any other venue conflicts remain for defendants to whom the ancillary venue doctrine does not apply, we hold that the entire case was properly transferred to East Baton Rouge Parish under La. C.C.P. art. 121 because of the risk of public harm that may result from potentially inconsistent results between trials held in two forums.

Exception of No Right of Action, Nos. 49,283-CA and 49,284-CA

In the appeals, Wells argues the trial court erred by holding that she had no right of action and dismissing her action. Although defendants argue that our previous decision in Willis-Knighton I already decided this issue against Wells and that this ruling should be the law of the case, we disagree. Wells did not testify in support of the demand for the preliminary injunction; her allegations were first addressed at the hearing on this exception. We consider our earlier decision on appeal too remote in connection to the instant dispute to apply the discretionary law of the case doctrine to bar Wells’ action absolutely. Nevertheless, some of this court’s In holdings in the first appeal are highly relevant to the question of Wells’ right of action.
In Rebel Distributors Corp. v. LUBA Workers’ Comp., 2013-0749 (La.10/15/13), 144 So.3d 825, 832-33, the court explained:
Generally, an action can be brought only by a person having a real and actual interest which he asserts. See La.C.C.P. art. 681. <rWhen the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit.” Howard v. Administrators of Tulane Educational Fund, 07-2224, p. 16 (La.7/1/08), 986 So.2d 47, 59, citing 1 Frank L. Maraist & Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.7, 121 (1999). The objection is urged through the peremptory exception of no right of action raised by the defendant or noticed by the court on its own motion, in either the trial or appellate court. See La. C.C.P. arts. 927 and 2163. “The function of the peremptory exception is to have the plaintiffs action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action.” La. C.C.P. art. 923. “On the trial of the peremptory exception [of no right of action] pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.” La. C.C.P. art. 931.
[[Image here]]
An appellate court considering an exception of no right of action should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person. See Hood v. Cotter, 08-0215, 08-0237, p. 17 (La.12/2/08), 5 So.3d 819, 829. Where doubt exists regarding the appropriateness of an objection of no right of action* it is to be resolved in favor of the plaintiff. Teachers’ Retirement System of Louisiana v. Louisiana State Employees’ Retirement System, 456 So.2d 594, 597 (La.1984).
*404 The determination of whether a plaintiff has a legal right to bring an action raises a question of law, which requires de novo review. See Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582, p. 9 (La.11/29/06), 943 So.2d 1037, 1045; Gibbs v. Delatte, 05-0821, p. 6 (La.App. 1 Cir. 12/22/05), 927 So.2d 1131, 1135, writ denied, 06-0198 (La.4/24/06), 926 So.2d 548.
In support of her contention that the trial court erred in sustaining the exception of no cause of action, Wells submits:
• She has a right of action under La. C.C. art. 458;
• She has a right of action under §§ 78-51 .and 78-56 of the Shreveport Municipal Code; and
• She has a right of action under the zoning statutes.
La. C.C. art. 458 provides:
Works built without lawful permit on public things, including the sea, the seashore, and the bottom of natural navigable waters, or on the banks of navigable rivers, that obstruct the public use maybe removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.
The owner of the works may not prevent their removal by alleging prescription or possession.
Emphasis added.
The category of potential plaintiffs under this article includes “any person residing in the state,” and certainly that category is quite broad, but an action under this article may be brought only' for works built on public things that are built without lawful permit. Assuming for purposes of discussion that the servitude for the Forb-ing Ridge Road is a public thing that can be the subject of an action under this article, this court’s opinion in Willis-Knighton I noted the absence of any showing in the record that the Forbing Ridge Road was built without lawful permit. At the hearing on the exception of no right of action, Wells made no additional showing that the road was built without the proper permits.
| ^Nevertheless, as the plaintiff points out, whether the road was built with or without the proper permit is a question of fact that has yet to be decided by the factfinder. The absence of an affirmative finding was partly fatal to the demand for injunctive relief in Willis-Knighton I, but that was a preliminary proceeding, not the ultimate determination of the propriety of constructing the road and the other issues raised by the facts pled in the petition. Although this question of fact ultimately may be resolved against the plaintiffs, given this court’s observations in the first appeal, it has not yet been definitively resolved. We decline to adopt the appel-lees’ arguments that the absence of evidence in support of Wells’ claims means that she has no right of action under this provision.
Likewise, although this court’s previous opinion discussed the inapplicability of the Shreveport zoning ordinances in this case, the record does not reveal that the issues of zoning and the various permits required for road building have been fully and finally adjudicated; our prior opinion addressed only the plaintiffs’ efforts to obtain a preliminary injunction. Although the proof adduced in that earlier proceeding as to the applicability of the zoning rules was insufficient to satisfy the burden required for the issuance of a temporary injunction, many of those issues are more appropriately decided in the context of an exception of no cause of action, summary judgment, or at trial, not on the trial of an exception of no right of action. Thus, we conclude *405 that Wells has made a sufficient showing that she has a right of action to continue with her suit.
luDECREE
The judgment of the trial court is affirmed insofar as it transferred this case to the 19th Judicial District Court. The trial court’s ruling sustaining the exception of no right of action is reversed, as is the judgment dismissing Wells from the suit. Costs are assessed equally to applicants in Nos. 49,558-CW and 48,559-CW and to the appellees in Nos. 49,282-CA and 49,-283-CA.
AFFIRMED IN PART; REVERSED IN PART.
STEWART, J., concurs.

. This writer dissented, believing that the trial court should have granted the preliminary injunction.

. As explained in our previous opinion, defendant Larkin Development at Railsback, L.L.C. ("Larkin Railsback”), owns approximately 100 acres north of Railsback Road and south of Floumoy-Lucas; defendant Larkin Development North, L.L.C. ("Larkin North"), owns approximately 37 acres of land between Bayou Pierre and Flournoy-Lucas. The Esplanade subdivision was zoned in these areas in 2007 and 2011. For convenience, these parties are referred to collectively as "the Larkin parties.”

.The stipulation states:
New homes shall not be constructed except that homes that front Railsback Road until documentation from the appropriate authorities having jurisdiction has been received by the Planning Director that clearly demonstrates to the satisfaction of the Planning Director that the Floumoy-Lucas entrance, bridge and boulevard has been constructed to in [sic] compliance with any and all local state and federal guidelines that may be applicable to said construction.

. The document, entitled "Public Servitude of Passage and Access Road Right-of-Way Relocation,” provides in pertinent part:
The undersigned owner hereby declares a public servitude of passage upon the described right of way. The servitude of passage or any portion thereof may not be revoked without the dedication of a replacement servitude connecting the Flournoy-Lucas Road to the existing Bayou Pierre Bridge. The roadway improvements within the servitude shall be constructed to comply with all local, state and federal guidelines that are applicable to said construction. The roadway shall be privately maintained until such time as public dedication is granted.

. La. R.S. 13:5104(A) provides
A. All suits filed against the state of Louisiana or any state agency or against an officer or employee of the state or state agency for conduct arising out of the discharge of his official duties or within the course and scope of his employment shall be instituted before the district court of the judicial district in which the state capital is located or in the district court having jurisdiction in the parish in which the cause of action arises.

. After these matters lodged in this court, the Larkin parties settled the claims by and against them and are no longer parties in these cases.